**RAY A. SCHARER AND COMPANY, INC., Plaintiff–Appellant, Cross–Appellee,**

**v.**

**PLABELL RUBBER PRODUCTS, INC., Defendant–Appellee, Cross–Appellant.**

**Nos. 87–1352, 87–1353.**

United States Court of Appeals, Sixth Circuit.

Argued May 9, 1988.

Decided Sept. 27, 1988.

318

Christine E. Moore (argued), Welch Taylor, Carter, Butterfield, Riseman, Clark & Howell, P.C., Carl M. Riseman, Lapeer, Mich., for plaintiff-appellant, cross-appellee.

T. Scott Johnston (argued), Barbara E. Herring, Cooper, Straub, Walinski, and Cramer, Toledo, Ohio, for defendant-appellee, cross-appellant.

Before WELLFORD and NORRIS, Circuit Judges; and EDGAR,[*] District Judge.

WELLFORD, Circuit Judge.

Ray A. Scharer was for many years the sales representative of Plabell Rubber Products, Inc., (Plabell) a manufacturer of a variety of rubber products, the principal operating in corporate form as Ray A. Scharer and Company (Scharer Co.). During the course of Scharer Co.'s representation of defendant Plabell, it also sold products manufactured by other companies, including Bauman & Harnish, under the name of Shurclose Seal of Indiana (Shurclose).

In the early 1980s, Plabell was acquired by its current president, Harry E. White. White began to question Scharer Co.'s competition with Plabell through its sale of products manufactured by other companies. Ultimately, in June, 1985, Plabell terminated its relationship with Scharer. At that time, Plabell allegedly owed Scharer several months of sales commissions, which it refused to pay, contending wrongful activity on the part of Scharer Co.

Scharer Co. in this litigation seeks payment of withheld commissions and also damages for Plabell's alleged wrongful termination of the longstanding business relationship between the parties. Plabell counterclaimed based upon Scharer's alleged wrongful competition, and also asserted failure to use its best efforts to sell and promote Plabell's products.

Trial in this commercial dispute based on diversity commenced on January 15, 1987. After plaintiff had presented its proof, the district court granted Plabell's motion to dismiss Scharer Co.'s wrongful termination claim and directed the parties to appear on the following morning to attempt to negotiate a settlement of the remaining issues. Counsel for both parties appeared before the district court and presented an outline of a proposed settlement agreement whereby Plabell was to enter into a new representation agreement with Scharer Co. The proposed agreement would provide Scharer Co. sales commissions with respect to one existing Shurclose account and on all new accounts of Plabell's products, as well as the products of a second source rubber company to be established by Plabell. Plaintiff thereunder agreed to enter into a covenant not to compete with Plabell, and to turn over to Plabell its remaining existing Shurclose accounts. Finally, Scharer Co. agreed under the proposed settlement to transfer to Plabell all molds (used to manufacture rubber products) owned by it with warranties as to ownership and good

---

* The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennes- see, sitting by designation.

working condition. Based upon these arrangements, all claims by either party against the other were to be dismissed with prejudice. The district court required a written agreement setting forth the details of the proposed settlement by February 6, 1987.

During the next week, however, a dispute arose regarding the provision of the proposed settlement concerning Scharer Co.'s molds. Ray A. Scharer, at the time in his eighties, had testified both at his deposition and at trial concerning these molds owned by plaintiff. In his deposition, Mr. Scharer testified that he owned all but one of the molds used by Bauman & Harnish to manufacture Shurclose products. He also testified that he did not own the molds used by Bauman & Harnish to manufacture its standard line of mounts, some of which he sold as a representative. There is some uncertainty as to what was meant by Mr. Scharer as to his claim of owning all these molds. He contended that he was referring solely to grommet molds, all of which Scharer Co. in fact owns, but Mr. Scharer also testified on the second day of his deposition that he owned all mount molds for his parts located at Bauman & Harnish with one exception. This testimony was unclear and perhaps inconsistent with his previous testimony.

At trial, however, Mr. Scharer testified that Shurclose's prices and service were better than Plabell's, and it was consequently competitive with Plabell because Scharer Co. owned its molds or tools. He gave this testimony while being questioned about an exhibit that represented a summary of Shurclose accounts that were assertedly in competition with Plabell during 1980 through 1985. On cross examination, he admitted that the molds used at Shurclose's facility were owned by either Scharer Co. or by himself.

Plabell assumed based on Scharer's testimony that all molds used by Shurclose in its business were owned by Mr. Scharer or Scharer Co. with the exception of one grommet mold and the molds for Bauman & Harnish's standard line of mounts, and would be transferred to Plabell as part of the settlement. This issue was not discussed in detail during the settlement negotiations on January 29, 1987, and no specific representation to that effect was made by Mr. Scharer during the negotiations. It was developed during the later discussions that some of the business Shurclose produced came from molds which Scharer Co. did not own, specifically mount molds and some plug molds. Mr. Scharer and his wife, Dorothy, (as the principals in Scharer Co.) knew this during the negotiations and, indeed, planned to sell that portion of the Shurclose business conducted with molds owned by others to Bauman & Harnish.

When Plabell discovered that the entirety of Shurclose business would not be transferred by Scharer Co., the settlement negotiations deteriorated rapidly. Ultimately, Scharer Co. moved to set aside the proposed settlement, contending that because of the misunderstanding there had been no meeting of the minds and that to enforce the settlement in accordance with Plabell's understanding would work a hardship on Scharer Co. Plabell, on the other hand, moved for entry of judgment incorporating the terms of the settlement agreement construed to require Scharer Co. to transfer to Plabell all molds that Mr. Scharer had purportedly represented it owned. This would require Scharer Co. to acquire any such molds that it did not in fact own and deliver them to Plabell. Furthermore, Plabell demanded attorney's fees based on Mr. Scharer's bad faith and alleged misrepresentation. In response to Plabell's motion, Scharer Co. submitted, among other things, Mr. Scharer's affidavit attesting to his lack of intention to mislead Plabell, to his lack of concentration in his deposition due to illness, and to his mistaken belief at the time of his testimony that more of the molds belonged to Scharer Co. than was the case.

After hearing counsels' argument the district court concluded that Plabell had a right to rely on the prior sworn testimony of Mr. Scharer in negotiating the settlement. The district court, however, ruled that the settlement was not effective "because there was a mistake on the part of the plaintiff, and not on the part of the

defendant." As a consequence, the district judge also decided that he would be unable to preside over a continuation of the trial and that the case would therefore have to be retried.

The district judge also indicated that if he set aside the settlement he would sanction Scharer Co. for the cost of the court's wasted time in the amount of $19,200.00,[1] with attorney's fees for Plabell. Thereafter the district court ruled that the settlement was ineffective and ordered Scharer Co. to pay court costs in the amount of $19,200.00 to the court clerk and attorney's fees of $4800.00 to Plabell within twenty days. Scharer Co. appeals the assessment of sanctions, and Plabell appeals from the assessment of attorney's fees, claiming that it was an inadequate award.

▮ Under the normal rule and in the usual case, attorney's fees are generally not available to the prevailing party in the absence of statutory authorization. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). That normal rule does not apply, however, where a party or counsel have acted in bad faith in the instigation or conduct of litigation, and in those circumstances, the court has the inherent authority to assess an award of attorney's fees against either the litigant or his attorney. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980). *See also Shimman v. International Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1228–30 (6th Cir.1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). Attorney's fees have been awarded pursuant to a court's inherent authority to sanction "in the interest of justice" even in the

absence of a specific finding of bad faith, despite language in *Roadway Express* to the contrary. *Grinnell Brothers, Inc. v. Touche Ross & Co.*, 655 F.2d 725 (6th Cir. 1981).[2]

The Third Circuit, sitting en banc, recently upheld the imposition of the cost of unnecessarily impanelling a jury as a sanction for an attorney's misconduct as a valid exercise of the district court's inherent authority, despite the failure of the district court to invoke its contempt power, where "the district court tied its sanction to specific costs that bore a direct relationship to the alleged misconduct and thus offered a nexus and a limit." *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 565 (3d Cir. 1985), (overruling its prior en banc decision in *Gamble v. Pope & Talbot, Inc.*, 307 F.2d 729 (3d Cir.), *cert. denied*, 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962)).

*Eash* made a careful and lengthy analysis of a district court's inherent powers in this context, and noted the myriad penalties available pursuant thereto, including the extreme sanction of dismissal of the lawsuit. While upholding the authority to impose a monetary sanction, the *Eash* court did not dispense with the necessity for procedural safeguards, concluding that "a monetary detriment should not be imposed by a court without prior notice and some occasion to respond." 757 F.2d at 570. *See also, Miranda v. Southern Pacific Transp. Co.*, 710 F.2d 516, 520, 521 (9th Cir.1983).

"An award of attorney's fees ... is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir.1986). Before an award of

---

1. The court based this figure upon its estimation that "[i]t costs $600.00 an hour to run this court" and multiplied that amount by the "roughly 32 hours" of trial that had taken place.

2. Scharer Co. contends that *Grinnell* is an anamoly at best, and at worst does not provide an additional basis for the court's exercise of its inherent authority to award fees. Scharer Co. argues that the *Grinnell* court declined to remand the case for a determination of bad faith because the district court had made findings of fact which supported such a determination

without remand. In *Grinnell*, however, the district court did not simply fail to determine whether the sanctioned party had acted in bad faith, but rather specifically held that there was no bad faith on the part of the sanctioned party and consequently premised its award upon its inherent power to order such a recovery in the interest of justice. We affirmed while acknowledging *Roadway Express*, but holding it inapplicable in that case. It is not an easy task to reconcile *Roadway Express* and *Grinnell*.

attorney's fees is made against a party, there must be a reasonable opportunity to respond to the prospective imposition. *In re Ruben,* 825 F.2d 977, 985 (6th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). Also, this court has recently expressed reservation about "fines" payable to the court imposed upon parties and their attorneys pursuant to Fed.R.Civ.P. 11 because of the constitutional implications, citing Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 202–03, in *Olga's Kitchen v. Papo,* 815 F.2d 79 (6th Cir.1987) (unpublished). In the above cited article, Judge Schwarzer notes the criminal character of a monetary fine as compared to imposition of attorney's fees or consequential expenses incurred "because" of the violation of Rule 11. Schwarzer indicates that imposition of a fine under Rule 11 without extending procedural protections is inadvisable, and we agree. 104 F.R.D. at 202. The standard to apply in such a case is whether there was an abuse of discretion.

Scharer Co. challenges the imposition of sanctions on a number of grounds: (1) that it did not act in bad faith; (2) that in any event the district court failed to make the required finding of bad faith because it found only that Scharer Co. had made a "mistake,"; (3) that fines such as the court costs imposed herein should not be assessed against litigants but only against attorneys because of their special relationship with the court; and, (4) that the district court failed to afford Scharer Co. required due process before ordering sanctions.

Plabell responds that Mr. Scharer's testimony operated as a fraud on the court, that the district court was not required to make a specific finding of bad faith under *Grinnell,* and that its finding that Plabell had the right to rely upon Mr. Scharer's testimony was sufficient to support the sanctions imposed. Plabell also maintains that Scharer Co. was provided due process because it had prior notice that Plabell sought attorney's fees and that its asserted bad faith was in issue, arguing that Scharer Co. had notice early in the hearing on March 5, 1987 that the district court was considering the imposition of sanctions and thus had sufficient opportunity to respond.

We believe that the district court's inherent authority to impose a monetary sanction applies equally to parties and their attorneys. We doubt, however, that the court may or should assess its "costs of operation" as sanctions especially without a full opportunity for the offending party or parties to be assessed to be heard or to challenge the basis and reasonableness of such sanction. "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express,* 447 U.S. at 764, 100 S.Ct. at 2463. It is clear that the district court does have inherent authority in the proper exercise of its jurisdiction to impose sanctions where it has found a party or an attorney to have acted in bad faith or where the court has acted within bounds of its contempt authority. *Roadway Express,* 447 U.S. at 466, 100 S.Ct. at 2464; *Miranda v. Southern Pacific Transp. Co.,* 710 F.2d 516, 520, 521 (9th Cir.1983). The district court must also afford the parties concerned in potential sanctions at least minimal procedural protections, including notice and the opportunity to respond or to be heard. *Miranda,* 710 F.2d at 522.[3] We do not, in so holding for due process purposes, indicate that there must be a formal "complaint" lodged with specifications in the event of a proposed sanction, or that a "full fledged" hearing is mandated, but notice and a reasonable opportunity to be heard is a minimum protection to be afforded. *Eash, supra,* and *Miranda, supra.* The Supreme Court has indicated in *Roadway Express* that the trial court must find "bad faith" or conduct "tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers." 447 U.S. at 767, 100 S.Ct. at 2465. We conclude that the district court in this case made no definitive finding of "bad faith" or

---

**3.** An exception to this requirement is imposition of summary criminal contempt sanctions in extraordinary situations. *Miranda* 710 F.2d at 522.

"conduct tantamount to bad faith" with respect to Scharer Co. Characterization of Mr. Scharer's inconsistent testimony as being a "mistake" simply does not meet the requirements for sanctions. Neither are we convinced that the district court gave adequate notice and opportunity to be heard under the circumstances.

Our holding in respect to sanctions under a court's inherent power therefore sets aside the $19,200 penalty designated against Scharer Co. It does not preclude the granting of reasonable attorney's fees as a part of a sanction if it is deemed that Scharer Co. was indeed found guilty of bad faith or equivalent type of conduct. Nor does our decision to remand preclude an assessment of reasonable costs if the district court, upon remand, determines that Scharer Co.'s conduct was responsible for the equivalent of a necessarily declared mistrial.

Accordingly, we set aside the assessment of sanctions and the award of attorney's fees against Scharer Co. and REMAND for further proceedings consistent with this opinion.