Daniel B. **MARS**, Petitioner,

v.

Arthur A. **ANDERMAN**, Morton Povman, Donald Warren and Carole Anderman, Respondents.

No. 86–CV–3200 (ERK).

United States District Court,
E.D. New York.

July 5, 1989.

---

Daniel Rhoades, Rhoades & Rhoades, Brewster, N.Y., for petitioner.

Marvin E. Frankel, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for respondents.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Plaintiff, Daniel B. Mars, transacted real estate related business activities through Daniel B. Mars, Inc. ("Mars, Inc."). Plaintiff testified that there came a time in early 1977 when Mars, Inc. found itself "in very bad financial condition. There were overdrafts in the bank account. Checks were being bounced. There was a heavy drain on my bank account. The District Attorney's Office had subpoenaed my books and records." T. 171. In addition, plaintiff feared that Mars, Inc. was about to be forced into a bankruptcy proceeding by its creditors.

In response to these circumstances, plaintiff contacted one of his attorneys, defendant Arthur Anderman, with whom plaintiff had had a close business as well as an attorney-client relationship. Defendant Anderman suggested that plaintiff cooperate with the District Attorney and that he terminate the business of Mars, Inc. According to plaintiff, he and Anderman subsequently formulated and carried out a plan by which plaintiff caused real estate interests owned by him to be transferred to Anderman for the purpose of defrauding certain of plaintiff's creditors. To accomplish this plan, plaintiff and Anderman eventually executed an agreement conveying these real property interests of plaintiff to Anderman's wife with no provision for a retention of interest by plaintiff. Presumably to mask the true purpose of the conveyance, the agreement indicated only that the property transfers were intended to compensate Anderman for unpaid legal

fees incurred by plaintiff in past dealings and for interest free loans from Mr. Anderman (which, according to both plaintiff and Anderman, were in fact never made).

Plaintiff testified that he unsuccessfully sought an accounting of the transferred properties from Anderman in 1979 or 1980. Plaintiff also requested other accountings and cash advances or loans from Anderman, all of which were also refused. When Anderman refused the last of these requests, plaintiff commenced this suit, naming Anderman and his wife, Carole Anderman, among others, as defendants. According to the complaint, defendants "engaged in a pattern of racketeering activity" by means of Anderman's law firm "for the purpose of depriving plaintiff of his interest in various parcels of real property" and other property "by means of two or more racketeering acts of extortion" and "mail fraud." The extortion referred to consisted of representations by Anderman that, unless plaintiff executed the agreement alluded to above, Mars "was going to jail." T. 185. On the other hand, if the agreement was executed, Anderman would "use his influence and his contacts to keep me out of jail, protecting my real estate license, do all these things that I was very worried about." T. 185. In addition to his RICO claim, plaintiff alleged state fraud and legal malpractice claims.

During the course of a two day bench trial held here, plaintiff's RICO allegations were revealed to be entirely without merit by plaintiff's own testimony:

Q. Mr. Mars, the Court/Nevins properties, were they transferred because of any threat that was made to you that you were going to go to jail?

A. No.

Q. And they were transferred, as I take it, with the understanding that it was simply to put them out of the reach of your creditors; is that right?

A. That's correct, sir. Certain ...

Q. Certain creditors. You understand clearly that that was the purpose of it?

A. Yes.

T. 250. Indeed, plaintiff's counsel—pointing out that the predicate acts that plaintiff's previous counsel (who filed this action) "had in mind were the statements by Arthur Anderman, you're going to jail. And the implication being that if the plaintiff didn't sign the agreement that Arthur Anderman had drafted that he would in fact go to jail"—conceded that "we have not made out a case on the RICO." T. 285. Accordingly, the RICO claim was dismissed. Because the dismissal was based on a finding that the federal claim alleged was "discernably meritless," the pendent state claims were also dismissed for lack of subject matter jurisdiction. T. 292; *see Hughes v. Patrolmen's Benevolent Assoc.*, 850 F.2d 876, 881 (2d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).

Defendant Anderman now seeks sanctions pursuant to F.R.Civ.P. 11 against plaintiff and Rudy Hirschheimer, the attorney who filed the complaint, as well as Jonathan Marks, the attorney who tried the case. While the circumstances of this case mandate the imposition of sanctions against plaintiff, they do not justify the imposition of sanctions against either Hirschheimer or Marks.

## *Discussion*

■ Rule 11 provides in part that:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Once a violation of this provision has been established, the imposition of sanctions is mandatory. *Yosef v. Passamaquoddy Tribe*, 876 F.2d 283, 287 (2d Cir.1989) (citing *Eastway Construction v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98

L.Ed.2d 226 (1987); F.R.Civ.P. 11 Advisory Committee Note to 1983 amendment).

■ Hirschheimer, who was initially retained by plaintiff to prosecute this suit, drafted and signed the pleadings at issue. The question here is whether, at the time the complaint and the amended complaint were signed by Hirschheimer, they were, "to the best of [Hirschheimer's] knowledge, information, and belief formed after reasonable inquiry ... well grounded in fact."

■ Hirschheimer's claim that he relied on information provided by plaintiff in drafting the complaint and the amended complaint is not challenged by Anderman. Although a claim of subjective good faith reliance is not enough to defeat an application for sanctions, *see Kamen v. American Tel. & Tel.*, 791 F.2d 1006, 1012 (2d Cir. 1986) (citing *Eastway Construction v. City of New York*, 762 F.2d at 254), it is unnecessary here to determine the nature and extent of the inquiry an attorney must make before he may rely on facts related to him by his client. Suffice it to say that there existed sufficient corroborating factors at the time Hirschheimer drafted the amended complaint to satisfy the objective standard applicable to Rule 11 inquires, i.e., "whether 'after reasonable inquiry, a competent attorney could ... form a reasonable belief'" that plaintiff's claims were well grounded in fact. *Id.* (quoting *Eastway Construction v. City of New York*, 762 F.2d at 254). Specifically, the investigation into plaintiff's affairs by the District Attorney at the time of the alleged extortion and the apparent lack of adequate consideration to justify the transfer of the properties to Anderman both would lend factual support to plaintiff's allegations as conveyed to Hirschheimer.

Anderman, however, presses the argument that Hirschheimer should be subject to sanctions because reasonable inquiry would have revealed to him that plaintiff's RICO claim was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." This argument seeks an inquiry that is more appropriate after a successful dispositive pre-trial motion than in the kind of post-trial satellite litigation involved here.

In *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), the Court of Appeals held that "rule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Id.* at 1275 (quoting *Eastway Construction v. City of New York*, 762 F.2d at 254). Anderman's contention that plaintiff's claims here were "patently" certain to fail is undermined by his conduct in this suit. Specifically, Anderman never sought dismissal or summary judgment after the filing of the amended complaint. Indeed, Anderman's counsel conceded at oral argument that this was not an appropriate case for summary judgment. Accordingly, assuming the competence of Anderman's counsel and that he undertook a reasonable inquiry of plaintiff's RICO claims prior to concluding that no grounds existed for seeking summary judgment, it was not "patently clear" prior to trial that plaintiff's claim had "absolutely no chance of success."

■ Anderman's further application for sanctions against Jonathan Marks fails for additional reasons. Marks, who was retained immediately prior to trial, neither signed the amended complaint nor filed any papers asserting plaintiff's RICO allegations. In *Oliveri v. Thompson*, the Court of Appeals held that "rule 11 applies only to the initial signing of a 'pleading, motion, or other paper.'" 803 F.2d at 1274. Moreover, "[t]he key to rule 11 lies in the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit. While a continuing prohibition against dilatory litigation is imposed by [28 U.S.C.] § 1927, rule 11, by contrast, deals with the signing of particular papers in violation of the implicit certification invoked by the signature." *Id.* (citations omitted). Accordingly, because violation of Rule 11 mandates sanctions against only "the person who signed" the paper in question, "a represented party, or both," Marks cannot be subject to sanctions pursuant to Rule 11.

■ While Marks cannot be sanctioned for the pleadings signed by Hirschheimer, "a represented party" may be the subject of mandatory sanctions. *See* F.R.Civ.P. 11 Advisory Committee Note to 1983 amendment. This is especially true where, as here, the represented party "was the catalyst behind this frivolous" proceeding. *Chevron v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985). Plaintiff admitted at trial that he misrepresented to counsel his motivation for transferring the properties to Anderman, and that in fact they were not "transferred because of any threat that was made to [him] that [he was] going to go to jail." T. 250. In view of this admission, it is beyond question that plaintiff caused the amended complaint drawn up by Hirschheimer to contain allegations that had no basis in fact. Accordingly, plaintiff's claim "that I made the subject of this action under the RICO statute in Federal Court, rather than a state court action, on the advice of an attorney," Mars Aff. at 1, is not relevant to the determination whether he is to be subject to sanctions.

While the imposition of sanctions in this case is mandatory, "[i]t is well settled that Rule 11 empowers judges with discretion to award" sanctions appropriate "to serve the sanctioning purpose of the rule." *International Shipping Company v. Hydra Offshore Inc.,* 875 F.2d 388, 392 (2d Cir.1989). Moreover, "[t]he scope of that discretion is broad" and " 'implies that a decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand....' " *Id.* (quoting *Eastway Construction v. City of New York,* 821 F.2d 121, 123 (2d Cir.1987)).

■ The "sanctioning purposes" implicated by a particular case will necessarily vary according to "the parties, the violation, and the nature of the case." *Thomas v. Capital Sec. Services,* 836 F.2d 866, 877 (5th Cir.1988) (en banc). Accordingly, in a particular case sanctions may be imposed "primarily to reprove appellants' attorney rather than to compensate the opposing side for its expenditures in resisting the action," *International Shipping Company v. Hydra Offshore, Inc.,* 875 F.2d at

392, or to punish represented parties who violate Rule 11, *Chevron v. Hand,* 763 F.2d at 1187. Here, the nature of the case militates in favor of sanctions that serve a deterrent/punitive purpose.

Based on the evidence adduced at trial, there was a substantial basis for plaintiff's pendent claim seeking the return of the property he conveyed to Anderman. The fact that the purpose of the initial conveyance from Mars was itself tainted by his intention to defraud creditors would not have deprived him of his remedy against Anderman. *Palumbo v. Palumbo,* 55 Misc.2d 264, 284 N.Y.S.2d 884, 888 (1967). Accordingly, a significant portion of Anderman's legal expenses for discovery and preparation for trial would have been incurred even if the case had been prosecuted in the New York courts and much of this legal work will not be duplicated if an action is now filed in New York.

Moreover, because the basis for the imposition of Rule 11 sanctions here is the false pleadings that plaintiff caused his attorneys to file, it would hardly seem equitable or reasonable to award those sanctions to an adverse party who gave testimony at trial that I did not credit. Accordingly, it is appropriate that the sanction imposed here serve to punish plaintiff for his violation of Rule 11 to deter him and others from similar violations in the future, and to compensate the United States for the needless expenditure of its judicial resources.

■ These purposes are served best by a sanction in the form of a fine payable to the Treasurer of the United States. Although the imposition of such a fine may raise certain due process concerns not implicated by the imposition of a "fees" sanction, *Ray A. Scharer & Co. v. Plabell Rubber Products,* 858 F.2d 317, 321 (6th Cir.1988), these concerns are adequately met where the party to be sanctioned has acted in "bad faith" and has been given "notice and a reasonable opportunity to be heard." *Id.* Plaintiff here conceded that he intentionally misrepresented to his counsel the nature of his arrangements with Anderman and that he lied in his deposition. Moreover, he was subsequently giv-

en a full opportunity to challenge the imposition of sanctions based on this misrepresentation.

## Conclusion

Pursuant to F.R.Civ.P. 11, plaintiff is ordered to deliver to the Clerk of the Court a check in the sum of $3,000.00, payable to the Treasurer of the United States. The defendant's motion for sanctions against Hirschheimer and Marks is denied.

SO ORDERED.