John W. FERRON, Plaintiff,

v.

ECHOSTAR SATELLITE, LLC,
et al., Defendants.

Civil Action No. 2:06–CV–453.

United States District Court,
S.D. Ohio,
Eastern Division.

July 30, 2009.

Lisa A. Wafer, Jessica G. Fallon, Ferron & Associates–2, Columbus, OH, for Plaintiff.

Kevin Shook, Frost Brown Todd LLC, Columbus, OH, Vincent J. Trimarco, Sr., Smithtown, NY, for Defendants.

## *OPINION AND ORDER*

NORAH McCANN KING, United States Magistrate Judge.

This matter is before the Court on *Plaintiff's Renewed Motion for the Imposition of Discovery Sanctions Upon Defendants E–Management Group, Inc., Dish Pronto, Inc., and 411 Web Directory, and Their Respective Counsel,* Doc. No. 328 (*"Renewed Motion for Sanctions "*).

## I. BACKGROUND

### A. Plaintiff's Claims

On June 12, 2006, plaintiff filed his initial complaint, which was later amended. Doc. Nos. 2, 72 and 271. Throughout his 1300–page *Third Amended Complaint,* plaintiff alleges that multiple defendants transmitted 703 email messages, which convey a commercial advertisement and display the name and/or logo of "Dish Network," to his account in violation of Ohio law. Plaintiff asserts claims under the Ohio Consumer Sales Practices Act ("CSPA"), O.R.C. § 1345.01 *et seq.,* and its corresponding advertising regulations.

### B. CD–ROM Containing E–Mails

On September 18, 2006, plaintiff produced to counsel for E–Management Group, Inc. ("E–Management") a CD–ROM containing all of these email messages. Attachment 3 to *Affidavit of Attorney Lisa A. Wafer* (*"Wafer Aff."*), attached to Doc. No. 205. Plaintiff's counsel avers that the graphic images within these emails were fully visible at the time of production. *Wafer Aff.* ¶ 4.

### C. Plaintiff's First Motion for Sanctions

On July 1, 2008, plaintiff moved for sanctions against defendants Echostar Satellite, LLC ("Echostar"), E–Management, Dish Pronto, Inc. ("Dish Pronto"), Hydra Media, LLC, and 411 Web Interactive, Inc. ("411 Web"), and their respective counsel "because they failed to preserve electronically stored information ("ESI") that is directly relevant to Plaintiff's claims." Doc. No. 205, p. 1. Specifically, plaintiff alleged that 155 of the emails that plaintiff received from defendants contain website links to images that are no longer being hosted by the website. *Id.* On September 9, 2008, the Court determined that the matter was not ripe for Court intervention and denied the motion without prejudice to renewal upon demonstration that plaintiff has exhausted all extrajudicial means of resolving the dispute. *Order,* Doc. No. 274, p. 2.

On September 11, 2008, plaintiff sent a letter to E–Management, Dish Pronto and 411 Web, asking for "evidence that email images and web pages linked thereto are still available in their original native electronic format[.]" Attachment 2 to *Supplemental Affidavit of Attorney Lisa A. Wafer* (*"Supp. Wafer Aff."*), attached to *Renewed Motion for Sanctions.*

### D. Communication With E–Management

On September 19, 2008, counsel for E–Management responded, requesting proof that plaintiff "took all adequate steps to preserve electronic copies or paper copies of all e-mails received and claimed to be wrongful as part of this action." Attachment 3 to *Supp. Wafer Aff.* Plaintiff's counsel responded the same day, stating that the emails had been maintained, but that plaintiff "does not possess the ability to preserve the linked websites containing the embedded images that appear in the emails." Attachment 4 to *Supp. Wafer Aff.* "If you have any evidence to the contrary [*i.e.,* that the images in the emails remain visible], I trust you will honor my request and forward it to me right away." *Id.*

On October 3, 2008, E–Management's counsel stated that "[w]e took the time to print all of the e-mails on the CD [that was previously produced by plaintiff]." Attachment 5 to *Supp. Wafer Aff.*, p. 1. E–Management's counsel disputed plaintiff's counsel's assertion, contending "at least half [of the emails attributed to E–Management] are fully viewable if you take the simple step of clicking on the box enabling the link to activate .... [and that] it is impossible to understand why you demand printed copies from E–Management." *Id.* For "copying costs and a small administrative fee," E–Management's counsel agreed to "attempt to match the e-mails with the ones that were printed upon production to E–Management." *Id.* Counsel for E–Management further advised that "by the time Plaintiff produced e-mails to Defendants, some already had disabled text." *Id.*

Plaintiff's counsel conceded that images, links and/or text appeared in 15 of the disputed emails, identifying them by date and time. Attachment 6 to *Supp. Wafer Aff.* She further stated that plaintiff requested printed copies of the email from E–Management because original electronic copies of the emails do not contain active images, links and/or text. *Id.*

On October 22, 2008, E–Management's counsel complained that "there are numerous e-mails without sent dates making their authenticity questionable, especially in the form produced." Attachment 7 to *Supp. Wafer Aff.* She contended that 42 of the 84 emails that plaintiff attributes to E–Management remained fully viewable. *Id.* Because even plaintiff's counsel conceded that 15 emails were viewable, the disputed number of emails was reduced to 69 from 84. *Id.*

In response, plaintiff's counsel reviewed each of the 84 E–Management emails and identified 26 emails that no longer have active websites; 38 emails that no longer have viewable graphic images; and 12 email messages that no longer contain viewable graphic images and that do not contain sent times. Attachment 8 to *Supp. Wafer Aff.* Plaintiff's counsel stated that "we would appreciate your forwarding these emails in viewable format, as well as the images that are no longer viewable in the disable [sic] website links." *Id.* She agreed to reimburse E–Management for the copying costs, but not for the "administrative fee." *Id.*

On November 18, 2008, E–Management's counsel stated that "in response to your identification of deactivated web links, you fail to state what you are demanding be done." Attachment 9 to *Supp. Wafer Aff.* She further denied that E–Management had any duty or ability to reproduce the websites because it was not E–Management's responsibility to make sure that these links are maintained. *Id.* As to plaintiff's request for copies of documents, "we will honor your request in due course and presume that you will pay the hourly rate for our paralegal to perform the task." *Id.* E–Management's counsel asked plaintiff's counsel to confirm her agreement to compensate for these costs. *Id.*

Plaintiff did not respond to E–Management's counsel's letter and E–Management did not provide the copies as of the date the *Renewed Motion for Sanctions* was filed. *Supp. Wafer Aff.* ¶ 11.

### E. Communication With Dish Pronto and 411 Web

When plaintiff's counsel did not receive a response from Dish Pronto and 411 Web to her letter dated September 11, 2008, she sent another letter to these defendants on November 13, 2008. Attachment 10 to *Supp. Wafer Aff.* Plaintiff's counsel again complained that "the images imbedded in the emails at issue have deteriorated and the web pages linked through the emails are no longer being hosted." *Id.* She

asked for defense counsel to provide "evidence to show that these images and web pages are available in their original native electronic format." *Id.*

On November 20, 2008, counsel for 411 Web emailed plaintiff's counsel and asked her to clarify the request. Attachment 11 to *Supp. Wafer Aff.* On November 24, 2008, plaintiff's counsel responded, identifying 20411 Web emails that "no longer have graphic images" and asking if 411 Web preserved any of these images. Attachment 12 to *Supp. Wafer Aff.* As of the date of the filing of the *Renewed Motion for Sanctions*, 411 Web's counsel had not responded. *Supp. Wafer Aff.* ¶ 15.

Counsel for Dish Pronto made no response whatsoever to plaintiff's counsel's requests "about the missing images in 25 Dish Pronto emails." *Supp. Wafer Aff.* ¶ 16.

### F. The Renewed Motion for Sanctions

Thereafter, plaintiff renewed his request for sanctions, arguing that

(1) E–Management has failed to preserve the images in 72 emails that it sent or caused to be sent to Plaintiff; (2) 411 Web has failed to preserve the images in 20 emails that it sent or caused to be sent to Plaintiff; and (3) Dish Pronto has failed to preserve the images in 25 emails that it sent or caused to be sent to Plaintiff.

*Renewed Motion for Sanctions*, pp. 7–8.[1] Plaintiff contends that the graphic images "convey the substance of the Dish Network advertisements at issue." *Id.* at 8–9. Plaintiff argues that the "unpreserved [electronically stored information]—the imbedded and linked graphic images that are no longer visible within the 117 emails—is the *only* evidence that Plaintiff is able to use to establish that the *contents* of the email advertisements violate Ohio law." *Id.* at 10(emphasis in original). Plaintiff further contends that these defendants "had an affirmative duty to preserve and maintain these graphic images." *Id.* at 9 (citing, *inter alia*, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003)). Plaintiff seeks sanctions pursuant to the Court's inherent authority. *Id.* at 9–10. Specifically, plaintiff requests that the Court conduct an evidentiary hearing as to defense counsel's efforts to maintain "ESI relevant to the Plaintiff's claims"; permit an adverse inference that the 117 identified emails contain advertisements that violated the OCSP; and award plaintiff attorney's fees and costs associated with the filing of the *Renewed Motion for Sanctions*. *Id.* at 12.

Only E–Management responded to the *Renewed Motion for Sanctions. Memorandum in Opposition to Plaintiff's Renewed Motion for the Imposition of Sanctions Upon Defendants E–Management Group, Inc., Dish Pronto, Inc., and 411 Web Directory, and Their Respective Counsel,* Doc. No. 336 (*"E–Management's Memo. in Opp."*). E–Management denies that it violated its duty to preserve, contending that plaintiff violated *his* duty to preserve evidence when he failed to print out the emails that he contends forms the basis for his claims. *Id.* at 5. E–Management seeks an award of "reasonable expenses," including attorney's fees, in opposing the initial motion for sanctions and the *Renewed Motion for Sanctions. Id.* at 10–11.

## II. STANDARD

■ A court has "the inherent power to sanction a party when that party exhib-

---

**1.** Plaintiff cites to the *Supp. Wafer Aff.* in support of his assertion. *Id.* Curiously, plaintiff specifically relies on paragraph 17 of that affidavit. However, the *Supp. Wafer Aff.* only contains 16 paragraphs; Paragraph 16 refers to Dish Pronto's failure to communicate. *Supp. Wafer Aff.* ¶ 16.

its bad faith[.]" *Youn v. Track, Inc.,* 324 F.3d 409, 420–21 (6th Cir.2003) (citing, *inter alia, Chambers v. NASCO,* 501 U.S. 32, 43–50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). "These powers come not from rule or statute but from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Stalley v. Methodist Healthcare,* 517 F.3d at 911, 920 (6th Cir.2008) (quoting *Chambers v. NASCO,* 501 U.S. at 43, 111 S.Ct. 2123). "Even if there were available sanctions under statutes or various rules in the Federal Rules of Civil Procedure ... the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 511 (6th. Cir.2002). "[T]he court ordinarily should rely on the Rules rather than the inherent power[;][b]ut if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.*

■ However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123. Most importantly, the "imposition of inherent power sanctions requires a finding of bad faith," *Youn,* 324 F.3d at 420–21 (quoting *First Bank of Marietta,* 307 F.3d at 513), or conduct "tantamount to bad faith." *Id.*

■ In *Chambers,* the United States Supreme Court considered some general contours of the concept of bad faith:

[A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order."

*Id.,* 501 U.S. at 45–46, 111 S.Ct. 2123 (internal citations omitted). By way of contrast, mere mistake "would not meet the requirements for sanctions." *See Mann v. Univ. of Cincinnati,* 114 F.3d 1188, 1997 WL 280188, at *5 (6th Cir.1997) (citing *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.,* 858 F.2d 317, 322 (6th Cir. 1988)).

## III. DISCUSSION

### A. E–Management

■ Plaintiff argues that electronic "graphic images" that "convey the substance of the Dish Network advertisements," which are crucial to his claims, have not been preserved. *Renewed Motion for Sanctions,* pp. 8–10; *Plaintiff's Reply Memorandum in Support of His Renewed Motion for the Imposition of Discovery Sanctions Upon Defendants E–Management Group, Inc., Dish Pronto, Inc., and 411 Web Directory, and Their Respective Counsel,* Doc. No. 338 ("*Plaintiff's Reply*").[2] E–Management denies any malfeasance and contends, *inter alia,* that some of the graphics were missing at the time of plaintiff's production. *E–Management's Memo. in Opp.,* pp. 3, 6–7. Nevertheless, E–Management, which printed off paper copies of e-mails at or near the time they were produced, has offered to produce paper copies of e-mails at plaintiff's expense. *See, e.g., Id.* at 4; Attachment 5 to *Supp. Wafer Aff.* Accordingly, based on the present record, it ap-

---

**2.** The present record does not definitively establish whether or not plaintiff maintained paper copies of the disputed emails.

pears that many, if not all, of the graphic images were preserved in paper format.

Plaintiff complains that emails contain invisible "electronic information" and, therefore, a print-out "conveys only some of the information contained in an email." *Plaintiff's Reply*, pp. 4–5. However, plaintiff fails to explain what exactly is contained in this "electronic information" and how it supports plaintiff's claims. Speculation as to what this "electronic information" may or may not have demonstrated cannot serve as a basis for imposing an adverse inference. *See, e.g., Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 221 (S.D.N.Y.2003) (declining to impose an adverse inference because insufficient evidence existed to establish that deleted e-mails were likely to support the plaintiff's claims).

The parties also dispute (1) whether web links were disabled even before defendants had knowledge of a potential action by plaintiff, and (2) whether other third parties, not E–Management, maintain "some of" the websites at issue. However, it is unclear which web links may have been disabled, and when and why they were disabled, and over which websites E–Management has control. At a minimum, the current record does not establish that E–Management had a duty to preserve every website at issue in the disputed emails.

Because many, if not all, paper copies of the disputed e-mails have been preserved,

and plaintiff has not established E–Management's duty to maintain certain websites, plaintiff has submitted no real evidence that E–Management or its counsel engaged in bad faith. Based on the present record, the Court cannot conclude that plaintiff has met his burden of establishing that E–Management acted in bad faith or exhibited conduct that was "tantamount to bad faith." *See Youn,* 324 F.3d at 420–21. *Cf. BancorpSouth Bank v. Herter,* 643 F.Supp.2d 1041, 1061 (W.D.Tenn.2009) (stating that the party seeking an adverse inference carries the burden of demonstrating, *inter alia,* that the other party had a culpable state of mind). Moreover, as discussed *supra,* plaintiff has failed to establish how certain "electronic information" is necessary to or even relevant to his claims. Considering the need to exercise cautious discretion in exercising its inherent authority, *see Chambers,* 501 U.S. at 44, 111 S.Ct. 2123, the Court concludes that the requested sanction, *i.e.,* an adverse inference that the disputed emails purportedly from E–Management violated Ohio law, is unwarranted.[3] Accordingly, the *Renewed Motion for Sanctions,* as it relates to E–Management, is **DENIED.**

Nevertheless, the Court will **ORDER** that E–Management produce to plaintiff within seven (7) days from the date of this *Opinion and Order* copies of the disputed emails purportedly from E–Management that are the subject of the *Renewed Motion for Sanctions.*[4] Plaintiff shall reim-

---

**3.** When considering whether to impose an adverse inference, other district courts within this circuit have stated that a court has discretion to deny such request for sanctions even where the court finds "that all the elements entitling a party to an adverse inference have been met." *Smith v. USF Holland, Inc.,* No.: 3:07–CV–150, 2009 WL 2170136, at *6, 2009 U.S. Dist. LEXIS 62519, at *19–20 (E.D.Tenn. July 20, 2009). *See also Bancorp-South Bank,* 643 F.Supp.2d at 1061 (quoting *Kounelis v. Sherrer,* 529 F.Supp.2d 503, 520–21 (D.N.J.2008)).

**4.** It is unclear to the Court the number of emails purportedly from E–Management that are in dispute. Although the *Renewed Motion for Sanctions* and the *Supp. Wafer Aff.* state that 72 emails remain at issue, the correspondence between counsel suggests a different number. *See* Attachments 6, 7, 8 to *Supp. Wafer Aff.* (wherein E–Management contends that the number was reduced to at least 69 because plaintiff conceded that he could view images from 15 of the original 84 disputed emails).

burse E–Management for copying costs associated with this production. To the extent that there remain "dateless and timeless" emails that E–Management contends cannot be identified by it, *E–Management's Memo. in. Opp.*, p. 7 and Attachment 7 to *Supp. Wafer Aff.*, counsel for plaintiff and E–Management are **ORDERED** to meet and confer within ten (10) days to resolve this issue.[5]

In light of the foregoing, plaintiff's request for an evidentiary hearing is **DENIED** and plaintiff's and E–Management's requests for attorney's fees and costs associated with the motions for sanctions are likewise **DENIED**.

## B. Dish Pronto and 411 Web

Plaintiff argues that 411 Web failed to preserve images in 20 emails and that Dish Pronto failed preserve images in 25 emails. *Renewed Motion for Sanctions*, pp. 7–8. In addition to the same arguments that he advances as to E–Management, plaintiff contends that sanctions against Dish Pronto and 411 Web are warranted because these defendants failed to oppose the *Renewed Motion for Sanctions. Plaintiff's Reply*, p. 1 n. 1.

This Court disagrees. As discussed *supra*, it is unclear whether plaintiff preserved paper copies of the graphic images of these emails, whether Dish Pronto and 411 Web had a duty to maintain the weblinks at issue and how the "electronic information" is relevant to his claims. Accordingly, for the reasons discussed *supra*, the *Renewed Motion for Sanctions* is **DENIED** as to Dish Pronto and 411 Web. Nevertheless, within seven (7) days from the date of this *Opinion and Order*, counsel for Dish Pronto and 411 Web are **ORDERED** to advise plaintiff's counsel

whether or not these defendants have preserved electronic or paper versions of the disputed emails and, if they have preserved copies, to produce such copies to plaintiff.

**WHEREUPON,** *Plaintiff's Renewed Motion for the Imposition of Discovery Sanctions Upon Defendants E–Management Group, Inc., Dish Pronto, Inc., and 411 Web Directory, and Their Respective Counsel,* Doc. No. 328, is **DENIED** consistent with the foregoing.

---

**5.** To this end, the Court expects plaintiff's counsel to disclose to E–Management if plaintiff maintains paper copies of these emails. In addition, if plaintiff does not have paper copies, plaintiff's counsel shall provide, if possible, the missing dates and times to assist E–Management in locating these emails.