Tracie BENSMILLER, Gregg Bensmiller, Beatrice Boudreau, Brian Boudreau, Suzanne Pelletier, Deanna Merriman, Paul Merriman and Cynthia B. Diulio, Plaintiffs–Appellants,

v.

E.I. DUPONT DE NEMOURS & COMPANY, STATE OF LOUISIANA, doing business as Louisiana State Univ. Medical Center, Defendants,

Methodist Hospital, Defendant–Appellee.

Nos. 1900 to 1903, Dockets 93–7923(L), 93–7933, 93–7935, 93–7937 and 94–7221.

United States Court of Appeals, Second Circuit.

Argued June 24, 1994.

Decided Feb. 8, 1995.

David A. Reif, New Haven, CT (Elizabeth L. McMahon, Susman, Duffy & Segaloff, P.C., of counsel), for plaintiffs-appellants.

James F. Stapelton, Stamford, CT (Edward M. Brown, Day, Berry & Howard, of counsel), for defendant-appellee.

Before: NEWMAN, PIERCE, and LEVAL, Circuit Judges.

PIERCE, Circuit Judge:

Tracie Bensmiller et al., plaintiffs, appeal from a January 27, 1994 judgment of the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge* ), granting defendant Methodist Hospital's ("MH") motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2). The plaintiffs had brought these tort actions against E.I. Dupont de Nemours & Company ("Dupont"),[1] Louisiana State University Medical Center ("LSU"), and MH (collectively, the "defendants"), arising from injuries allegedly due to defective surgical implants manufactured by Vitek, Inc. ("Vitek"). On appeal, plaintiffs argue that the district court erred in granting MH's motion to dismiss, asserting that the district court did have jurisdiction over MH through the Connecticut long-arm statute for non-stock corporations, Conn.Gen.Stat. § 33–519. Although conceding that MH does not independently have the necessary contacts with Connecticut for the court to extend jurisdiction over MH, plaintiffs argue that the district court nevertheless has jurisdiction over MH because, they assert, Connecticut's long-arm statute reaches all parties to a joint venture, and MH was a participant in a joint venture with the Director of the Prosthesis Research Laboratory ("Lab") at MH's Fondren Center, one Dr. Charles A. Homsy ("Homsy"), over whom the court does have

jurisdiction.[2] For the reasons stated below, we reject plaintiffs' contention and we affirm the judgment.

## BACKGROUND

MH, the defendant-appellee, is a non-stock corporation licensed as a hospital by the State of Texas. In June, 1966, Homsy left his position with defendant, Dupont, and agreed to serve as director of the Lab, which is located in Texas.

MH agreed to fund Homsy's research of orthopedic prostheses at the Lab and to pay for patent applications. In exchange, Homsy agreed to pay MH royalties from proceeds generated from the manufacture and sale of patentable items developed as a result of research conducted at the Lab. These royalties were not to exceed 140% of the funds MH had provided to Homsy. In addition, Homsy was to pay MH up to $35,000 per annum as repayment for MH's support of the Lab. These agreements between Homsy and MH were later formalized into two written agreements dated November 26, 1968 and November 25, 1970.

In order to design, manufacture and market products developed through his research at the Lab, Homsy agreed to form a separate corporation. Thus, in December, 1969, Homsy formed Vitek, a Texas corporation. Soon thereafter, Homsy invented and patented new prosthetic implants composed of Proplast, a material comprised, in part, of Teflon. Vitek marketed a product called the Proplast Implant ("Implant") throughout the United States. Plaintiffs in this case received the Implants through medical procedures conducted in Connecticut. These Implants are the subject of the present suit.

Plaintiffs commenced separate actions in the Superior Courts of the State of Connecticut alleging that the Implants were defective and caused, *inter alia*, severe damage to their temporomandibular joints. Defendant Dupont, the supplier of the Teflon used to make the Implant, removed the cases to the district court on November 12, 1992, pursuant to 28 U.S.C. § 1441.[3]

---

1. The complaint against Dupont was not dismissed and Dupont is not a party to this appeal.

2. For purposes of deciding the motion to dismiss, the district court assumed, *arguendo,* that Connecticut did have jurisdiction over both Homsy and Vitek. Although the defendants contend on

appeal that Connecticut does not have jurisdiction over Homsy, we base this opinion on the district court's assumption that Connecticut does have jurisdiction.

3. One of the plaintiffs, Cynthia B. Diulio, filed suit directly in the district court.

Following removal to federal court, MH moved to dismiss plaintiffs' claims for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2). In response to MH's motion to dismiss, plaintiffs asserted that personal jurisdiction over MH could be established pursuant to Connecticut's long-arm statute, Conn.Gen.Stat. § 33–519. Conceding that MH did not manufacture, produce or distribute the allegedly defective Implants, plaintiffs argued that MH was involved in a joint venture with either Homsy or Vitek, over both of whom the court did have personal jurisdiction. In so claiming, plaintiffs hoped that the district court would apply a rule that the forum contacts of one co-venturer could be attributed to the other co-venturer for the purposes of personal jurisdiction. *See, e.g., Aigner v. Bell Helicopters, Inc.,* 86 F.R.D. 532, 540 (N.D.Ill.1980); *First Nat'l Bank of Minneapolis v. White,* 420 F.Supp. 1331, 1335 (D.Minn.1976). *But cf. Ytuarte v. Gruner + Jahr Printing & Publishing Co.,* 935 F.2d 971, 972–73 (8th Cir.1991) (holding that attributing forum contacts of partnership to individual partners or even to managing partner offended due process).

Before addressing the substance of plaintiffs' argument, the district court addressed the issue of which state's substantive law would govern the personal jurisdiction question.[4] The district court applied Connecticut's choice of law principles for the construction of contracts, and found that the substantive law of Texas was applicable to ascertain whether a joint venture existed. Applying the Texas standard, the court determined that neither Homsy nor Vitek were co-venturers of MH. The court concluded that even if Connecticut were to follow *Aigner,* no joint venture existed herein, and it thus granted MH's motion to dismiss. Plaintiffs filed a timely notice of appeal.

On appeal, plaintiffs reiterate the argument presented to the district court, to wit: (1) a joint venture existed between MH and Homsy, and (2) under Connecticut law, the forum contacts of one co-venturer are attributable to the other co-venturer. Plaintiffs do not dispute the district court's holding that,

under Texas law, a joint venture does not exist between Homsy and MH. However, plaintiffs argue that the district court erred by applying Texas instead of Connecticut substantive law to determine whether a joint venture existed, and, that under Connecticut law, the relationship between Homsy and MH amounts to a joint venture. We now turn to the question of whether the district court erred as plaintiffs contend.

## DISCUSSION

■ This case presents a question of personal jurisdiction over a foreign corporation in a diversity suit. "[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits . . . ." *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963) (in banc); *accord Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process. *Greene v. Sha–Na–Na,* 637 F.Supp. 591, 595 (D.Conn.1986); *Frazer v. McGowan,* 198 Conn. 243, 246, 502 A.2d 905 (1986); *Lombard Bros., Inc. v. General Asset Management Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983).

MH is a Texas non-stock corporation, and the relevant Connecticut long-arm statute is Conn.Gen.Stat. § 33–519(c), which provides:

> Every foreign corporation shall be subject to suit in this state by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state on any cause of action arising ... (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or

---

4. For purposes of its opinion, the district court assumed, *arguendo,* that Connecticut would ex-

tend the *Aigner* holding that an entities' contacts are extended to all of that entities' co-venturers.

where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers....

It is undisputed that MH did not itself produce, manufacture, distribute or sell the allegedly defective Implants. Plaintiffs argue, however, that § 33–519(c) reaches MH because MH was engaged in a joint venture relationship with Homsy.[5] Plaintiffs concede that this relationship was not a joint venture under Texas law, the only place where plaintiffs contend that a joint venture was formed. Assuming, *arguendo*, that the Connecticut legislature intended that § 33–519(c) could be used as a vehicle to reach foreign corporations whose sole contact with Connecticut has been involvement in a joint venture with an entity over which Connecticut does have jurisdiction, a question remains as to whether the rule was intended to apply even when the foreign corporation was *not* a joint venturer according to the law of the state where the alleged joint venture was formed.

■ The interpretation of § 33–519(c) is a Connecticut state law question, therefore, we look to Connecticut caselaw interpreting § 33–519(c) to decide the issue presented herein. *See Plummer v. Lederle Labs., Div. of Am. Cyanamid Co.*, 819 F.2d 349, 355 (2d Cir.), *cert. denied*, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A survey of Connecticut state law reveals that this particular jurisdictional question has not been addressed by the Connecticut courts, and, since the law of the state is uncertain on this question, our task is to "carefully ... predict how the highest court of the forum state would resolve the uncertainty...." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994); *accord Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 195 (2d Cir.1989); *Plummer*, 819 F.2d at 355. In

predicting how Connecticut would resolve this issue, we should carefully review all the resources that would be available to the state's highest court, including " 'the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, [and] federal cases which construe the state statute ...,' " *Travelers*, 14 F.3d at 119 (quoting *In re Eastern and Southern Districts Asbestos Litig.*, 772 F.Supp. 1380, 1391 (E. & S.D.N.Y. 1991), *rev'd on other grounds, In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.1992)), as well as decisions of other jurisdictions on the same or analogous issues, *see, e.g., Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir.1993).

■ Considering all the resources available in informing our prediction, we believe the Connecticut Supreme Court would require, at a minimum, that the relationship between the parties must amount to a joint venture in the state where the joint venture was allegedly formed—in this case, Texas. In short, we do not believe the Connecticut Supreme Court would take the extraordinary position of subjecting MH to the jurisdiction of its courts if, as plaintiffs concede, the relationship between Homsy and MH would not be a joint venture under Texas law.

The language of § 33–519(c) is not helpful in making our prediction. The terms of § 33–519(c) do not explicitly provide a mechanism to reach co-venturers of a joint venture, although the statute does confer jurisdiction over entities which market or sell products "through the medium of independent contractors or dealers." Conn.Gen.Stat. § 33–519(c)(3). However, we have not found any cases that have construed the definition of independent contractors or dealers to include entities involved in a joint venture. The sparse legislative record for both § 33–519(c) and its sister long-arm statute for stock corporations, § 33–411(c),[6] do not ad-

---

5. It is unclear from plaintiffs' brief whether they intend to assert that MH is in a joint venture with Homsy or with Vitek. Because the relationship between Homsy and MH is significantly less attenuated, we analyze the question as it pertains to Homsy.

6. Section 33–519(c) is virtually identical to Conn. Gen.Stat. § 33–411(c), the long-arm statute for stock corporations. Connecticut courts have generally interpreted the statutes alike and treated them synonymously, *see, e.g., Frazer*, 198 Conn. at 247, 502 A.2d 905; *Thomason v. Chemical Bank*, No. CV93 0133396, 1994 WL 247962,

dress whether these statutes reach participants in a joint venture or an analogous relationship such as partners. *See, e.g.,* 8 Conn.H.R.Proc., Pt. 12, 1959 Sess., at 5255–59; 8 Conn.S.Proc., Pt. 7, 1959 Sess., at 3232–36; Conn. Joint Standing Committee Hearings, General Law, Pt. 3, 1959 Sess., at 1024–29, 1044–67. The pertinent legislative history does not suggest that if the Connecticut legislature expected to enact a long-arm statute to reach joint venturers that it intended that the statute would have the capacity to reach an entity that was not a joint venture according to the law of the state where the venture was allegedly formed.

In *Travelers,* we noted that it was important when predicting state decisions to consider how the ultimate prediction "can be woven into the . . . total fabric" of the state's law. 14 F.3d at 119. Since the question before us requires, in essence, that we determine whether to look to the substantive law of Connecticut or Texas, it is appropriate to look to Connecticut's conflicts of law rules to inform our decision.

Connecticut traditionally uses different choice of law rules for different types of actions. *See Williams v. State Farm Mut. Auto. Ins. Co.,* 229 Conn. 359, 363–64, 641 A.2d 783 (1994). In tort actions, Connecticut will generally employ the doctrine of *lex loci delecti* and apply the law of the state where the injury occurred. *Menczer v. Menczer,* 160 Conn. 563, 564–65, 280 A.2d 875 (1971). In contract cases, Connecticut has traditionally looked for guidance to the substantive laws of the state where the contract was formed or where the contract will have operative effect. *Williams,* 229 Conn. at 365, 641 A.2d 783; *Whitfield v. Empire Mut. Ins. Co.,* 167 Conn. 499, 506, 356 A.2d 139 (1975); *Breen v. Aetna Casualty & Sur. Co.,* 153 Conn. 633, 637, 220 A.2d 254 (1966); *see also U.S.F. & G. Co. v. Katrick,* No. CV92 03 80 14S, 1992 WL 83554, at *3 (Conn.Super. Apr. 21, 1992) (calling this rule the "place of contract" rule). However, on occasion, Connecticut has been willing to take a nuanced approach in determining which state's substantive law to apply. For instance, in the tort case of *O'Connor v. O'Connor,* 201 Conn. 632,

650–51, 519 A.2d 13 (1986), the Connecticut Supreme Court held that if the application of the law of the state where the accident occurred produces an arbitrary, irrational or harsh result, the court should instead apply the law of the forum with the most "significant relationship" to the parties and the cause of action. *See also Economu v. Borg–Warner Corp.,* 652 F.Supp. 1242, 1247 (D.Conn.) (refusing to apply the place of contract rule to determine which state's law to apply), *aff'd,* 829 F.2d 311 (2d Cir.1987). Nevertheless, the Connecticut courts have made clear that, although circumstances may occasionally arise when the "most significant relationship" test is useful, in general, contract issues still should be governed by the place of contract rule. *See, e.g., Katrick,* 1992 WL 83554, at *2.

Since a joint venture is created pursuant to a contract, either express or implied, 46 Am. Jur.2d *Joint Ventures* § 1, at 19 (1994); *see also Sadelmi Joint Venture v. Dalton,* 5 F.3d 510, 513 (Fed.Cir.1993) ("joint venture is generally an association of persons by way of contract") (internal quotations and citations omitted); *Dime Box Petroleum Corp. v. Louisiana Land & Exploration Co.,* 938 F.2d 1144, 1147 (10th Cir.1991); *cf. Steiner v. Bran Park Assocs.,* 216 Conn. 419, 582 A.2d 173, 176–77 (1990) (discussing joint venture formed through an agreement between parties), contract choice of law principles should generally govern an inquiry as to whether a joint venture exists. If this case presented a traditional common law contracts question rather than a jurisdictional one, we would follow Connecticut's general conflicts rules and apply the substantive law of the state where the joint venture was formed or of the state where the joint venture had operative effect. *See, e.g., Whitfield,* 167 Conn. at 506, 356 A.2d 139 (for contracts cases, court must apply the law of the state where contract was formed or has operative effect). Furthermore, if the facts of this case presented such a traditional contracts question, Connecticut's conflicts rules would compel us to look to Texas law since the alleged joint venture, contractual in nature, was both formed in Texas and was to have operative effect there.

at *4 (Conn.Super. June 2, 1994); *Ganim v. Mercafe, Inc.,* No. CV91 0284324S, 1992 WL 219325, at *1 (Conn.Super. Aug. 26, 1992),

therefore, we believe it is appropriate to resort to the caselaw and legislative history concerning § 33–411(c) in our discussion.

Even if we were to find that this was the rare circumstance compelling us to abandon Connecticut's place of contract rule for the most significant relationship test, we would still apply Texas substantive law vis-a-vis the alleged joint venture, since the parties to the alleged venture were domiciled or incorporated in Texas; all the activities relevant to their business relationship, including the research and development of the product occurred in Texas; and the Fondren Center Lab that MH had made available to Homsy was located in Texas. *See generally Restatement (Second) of Conflicts of Law 2d* § 188 (1971) (listing factors in determining the place with the "most significant relationship" which include: place of contracting; place of negotiation; place of performance; location of subject matter of contract; and domicile, residence and place of incorporation of parties).

This case does not present such a traditional contracts question, but rather a jurisdictional question—whether § 33–519(c) reaches MH. Nevertheless, Connecticut's contracts conflicts principles, *supra,* are instructive in ascertaining whether Connecticut would construe § 33–519(c) in such a way as to reach MH. Since Connecticut would look to Texas law to determine whether a joint venture exists with respect to a straightforward common law contracts question, it is reasonable for us to conclude, in the absence of any caselaw to the contrary, that Connecticut would similarly apply Texas law in ascertaining whether a joint venture exists for jurisdictional purposes. We see no reason why the same policy considerations which would lead Connecticut to look to the law of the state where a joint venture was formed or took operative effect in a conventional contracts case, would not cause a Connecticut court to do the same when, as here, the court must determine whether it has personal jurisdiction over a defendant on the ground that the defendant allegedly entered into a con-

tractual relationship, *i.e.* the joint venture, that provides jurisdiction.

The fact that the underlying cause of action in this case sounds in tort is irrelevant for the purpose of determining the reach of Connecticut's long-arm statute. Contrary to plaintiffs' assumption, the pivotal issue herein concerns jurisdiction, not conflicts of law. While it is certainly appropriate to inform our prediction of how Connecticut would answer this jurisdictional question by a resort to Connecticut's conflicts rules, we do not look to Connecticut's tort conflicts principles to inform a decision that contains an essential question that sounds in contract. Plaintiffs have not referred us to any precedent that suggests we should employ a contrary approach.[7]

In sum, we conclude that a Connecticut court would construe its long-arm statute to reach only those foreign corporations that are considered to be joint venturers in the state where the joint venture allegedly was formed.

■ We note, furthermore, that the opposite construction of § 33–519(c)—the construction asserted by plaintiffs—arguably offends the Due Process Clause of the Fourteenth Amendment. Due process permits the exercise of personal jurisdiction only when the nonresident defendant possesses sufficient "minimum contacts" with the forum state so that the assertion of personal jurisdiction over the defendant is consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (internal quotations and citation omitted). As was noted in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958), "it is essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the

---

**7.** Plaintiffs cite *Young v. Masci,* 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158 (1933), in support of their argument that tort choice of law principles should control our inquiry. *Young,* however, is inapposite to the present question concerning the reach of § 33–519(c). First, *Young* is not a case about personal jurisdiction. Indeed, *Young* does not address Connecticut law at all. In *Young,*

the Court held that it was permissible for a New Jersey court to apply New York law and hold a New Jersey car owner liable, for an accident involving his car in New York while another individual was using it. *Id.* at 260, 53 S.Ct. at 601–02. We do not consider *Young* instructive with respect to our present jurisdictional inquiry.

benefits and protections of its laws." (Emphasis added). Such purposeful conduct provides a defendant with "fair warning" that he and his property may be subject to the exercise of that forum state's power. *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, *J.*, concurring in judgment), *cited with approval in, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). The Due Process Clause provides this fair warning in order to confer "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In this case an issue would arise whether MH could have reasonably anticipated being subjected to the jurisdiction of a Connecticut court—based on the theory that under Connecticut law it entered into a joint venture with Homsy in Texas. *See id.* (noting that the applicable forseeability standard for due process analysis is whether "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there"). As plaintiff readily concedes, no joint venture exists between Homsy and MH under Texas law and Texas is the only state where MH arguably forged a joint venture with Homsy. It seems unreasonable to expect MH to have anticipated being haled into a Connecticut court on the ground that it is a joint venturer when that "joint venture" relationship never existed in the state where the venture was allegedly formed. Indeed, since concededly, under Texas law, MH was not a joint venturer, MH functioned more as Homsy's passive investor. MH's role, therefore, was more akin to that of a stockholder in a corporation. As Justice Stevens noted in *Shaffer*, "[o]ne who purchases shares of stock on the open market can hardly be expected to know that he has thereby become subject to suit in a forum remote from his residence and unrelated to the transaction." 433 U.S. at 218, 97 S.Ct. at 2587 (Stevens, *J.*, concurring in judgment). A construction of § 33–519(c) permitting MH to be reached jurisdictionally in Connecticut very well might violate the principles enunciated in *Woodson*. However, we need not resolve that issue.

Having reviewed the resources available to the Connecticut Supreme Court, we believe that the court would not construe § 33–519(c) as reaching MH herein. Accordingly, we hold that the district court did not err in dismissing the complaint for want of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

We affirm the district court's decision.