RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0087P (6th Cir.)
File Name: 03a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BARON T. YOUN; KYONG
HWAN CHOI, d/b/a CKH
Sportsworld, Ltd.,
    *Plaintiffs-Appellants,*

    *v.*

TRACK, INC.,
    *Defendant-Appellee.*

No. 01-3625

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 95-00192—Herman J. Weber, District Judge.

Argued: December 4, 2002

Decided and Filed: March 24, 2003

Before: RYAN, CLAY, and GIBBONS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** William H. Blessing, LAW OFFICES OF WILLIAM H. BLESSING, Cincinnati, Ohio, for Appellants. Jonathan Yedor, San Antonio, Texas, for Appellee. **ON BRIEF:** William H. Blessing, LAW OFFICES OF WILLIAM H. BLESSING, Cincinnati, Ohio, for Appellants.

Jonathan Yedor, San Antonio, Texas, Brian E. Hurley, CRABBE, BROWN, & JAMES, Cincinnati, Ohio, for Appellee.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiffs, Baron T. Youn and Kyong Hwan Choi, d/b/a CKH Sportsworld, Ltd., appeal the district court's order of May 31, 2001 refusing to transfer their action for breach of contract and dismissing their action with prejudice based on lack of personal jurisdiction. They also appeal an order denying their request to recuse the magistrate judge on March 7, 2000, and three separate orders imposing discovery sanctions on April 29, 1996, May 30, 1996, and June 7, 1996. We **AFFIRM** in part and **REVERSE** in part.

**FACTS**

In 1989 and 1990, Plaintiff Choi lived with his sister and his brother-in-law, Plaintiff Baron T. Youn, in Sharonville, Ohio. Choi resides in South Korea and sought to import American-made sports equipment. Youn is an Ohio resident.

Choi noticed a bowling ball advertisement from Track ("Old Track"), a bowling ball seller based in Solon, Ohio. Choi brought the ad to Youn's attention. Youn telephoned Old Track and arranged a meeting with its President, Phil Cardinale. Other telephone and fax communications between Cardinale and Youn followed their initial meeting. Choi speaks very little English, so Youn, acting as an interpreter, engaged in all communications with Old Track.

Plaintiffs allege that negotiations between Youn and Old Track led to an agreement between Old Track and CKH Sportsworld, Ltd. ("CKH"), the name under which Choi was doing business. Pursuant to this alleged contract, on or about September 1, 1990, CKH became the exclusive Korean

distributor of Old Track's products, including the "Trackster," one of Old Track's bowling balls.

Plaintiff Choi operated CKH as a sole proprietorship in South Korea. CKH imported sporting goods for sale in South Korea. All of CKH's employees resided in South Korea. Furthermore, CKH sold products and services only in South Korea. It had no American customers. Plaintiff Youn had no ownership interest in CKH.

Regular commerce between CKH and Old Track began, with Youn communicating with Old Track several times each week. From Cincinnati, Youn generated orders for bowling balls and directed those orders to Old Track's Solon, Ohio office. Old Track normally faxed confirmation of these orders back to Youn in Sharonville, Ohio.

Old Track itself did not manufacture the bowling balls. As CKH ordered balls, Old Track hired Columbia 300, a San Antonio, Texas-based company, to build the balls. Initially, Old Track shipped the balls to its Ohio location and exported them to South Korea from there. Later, Columbia 300 shipped the balls from San Antonio to Los Angeles, and then from there the balls traveled to South Korea.

In late 1991, Old Track's owner, Paul Seegott, sold the company's assets to a new Nevada corporation also called Track, Inc. ("New Track"), with its principal place of business in San Antonio, Texas.[1] All of Old Track's assets were located in Ohio. According to the asset-purchase agreement, New Track purchased the assets and assumed the liabilities specifically mentioned in the contract. The asset purchase contract does not mention the CKH-Old Track agreement. New Track hired Old Track's employees, including Cardinale, and opened offices in Solon, Ohio. New Track continued operating Old Track's bowling ball business. It arranged for Ohio telephone service and registered with various Ohio agencies as an Ohio employer; however, New Track's Texas

---

[1]One of the shareholders of Columbia 300 owned New Track.

office performed various shipping, billing and administrative functions.

After the asset purchase, the distributor arrangement between CKH and New Track continued as it had with Old Track. CKH purchase orders still originated from Youn, who sent them to New Track's offices in Salon. New Track confirmed these orders via fax. Columbia 300 continued to manufacture the balls in San Antonio. In 1992, CKH generated orders for over 19,000 bowling balls at a price of approximately $675,000. New Track, however, sold only 227 bowling balls and twenty bowling shirts to other customers from its Ohio office in 1992.

During the course of CKH's business relationship with New Track, Youn designed bowling ball logos for CKH's use in the Korean market. Youn called one of these logos the "Volcano." In early 1992, with Youn's authorization, CKH entered into a contract with New Track whereby New Track would sell CKH the same balls marketed as the "Trackster," but for less money.[2] CKH sold these balls under the "Volcano" logo. Pursuant to the Volcano agreement, New Track could sell Volcano balls in the United States, but not in Korea. Youn registered the Volcano logo as a trademark with Ohio's Secretary of State in August of 1992.

At the end of 1992, New Track moved its offices.[3] It transferred its Ohio offices and President Cardinale to San Antonio. In 1993, Youn directed CKH purchase orders to the new office in Texas. New Track still issued regular

---

[2]The parties vehemently contest every facet of this agreement. This disputed factual issue has no bearing on the merits of this appeal and nothing in this opinion should be construed as commentary on the trademark claim.

[3]New Track explains that it "operated from an office in Northern Ohio for approximately eleven months after the [asset] sale as an accommodation by [New Track] to allow [President Cardinale] to make arrangements to sell his home and move his family to Texas." (D. Br. at 20.)

confirmations to Youn in Ohio. On January 14, 1994, New Track notified CKH that it would terminate the exclusive distributorship agreement at the end of that year.

On February 3, 1994, Plaintiff Kyong Hwan Choi, d/b/a CKH Sportsworld, Ltd., filed a complaint in the Court of Common Pleas for Hamilton County, Ohio, against New Track, Inc., alleging that New Track breached the exclusive distributorship agreement. Choi voluntarily dismissed this complaint before complying with any of New Track's document requests.

On March 15, 1995, Choi and Youn sued New Track in the District Court for the Southern District of Ohio. Their complaint asserted breach of contract claims based on the alleged exclusive distributorship agreement and trademark infringement related to the "Volcano" logo. New Track responded on May 15, 1995, with a motion to dismiss that asserted the district court lacked personal jurisdiction. Plaintiffs filed a response in opposition to the motion on June 19, 1995.

In September of 1995, after one federal judge to whom the case had been assigned died and another took senior status, the parties agreed to have a magistrate judge adjudicate their case pursuant to 28 U.S.C. § 636(c)(4). The district court's order of reference referred the case to Magistrate Judge Robert A. Steinberg. On September 27, 1995, after conferring with counsel for the parties, U.S. Magistrate Judge Steinberg issued an order declaring New Track's personal jurisdiction motion "withdrawn," subject to reinstatement if settlement negotiations failed. The parties failed to settle, but New Track never formally moved to reinstate its motion.

Magistrate Judge Steinberg resigned in January of 1996. On February 12, 1996, the case was transferred to a visiting Magistrate Judge, Lynn V. Hooe, Jr. Five months later, the case was transferred again to the docket of another visiting Magistrate Judge, James Cook, who kept the case until November 21, 1996, when Magistrate Judge Timothy Hogan received the case.

Shortly after Plaintiffs filed their suit, New Track issued its initial discovery requests, including requests for documents. Plaintiffs responded by answering interrogatories and producing hundreds of documents. In August of 1995, New Track made a second series of document requests, including requests for Youn's personal income tax returns and CKH's financial statements. Youn objected to the request for his personal income tax returns and offered instead to produce any portions of the tax returns that had anything to do with the subject of the lawsuit. Plaintiffs also failed to produce documents supporting their damage calculations and CKH's financial statements. New Track then moved to compel discovery and Plaintiffs asked for a protective order. Less than a month later, New Track filed its first motion for sanctions.

On February 26, 1996, the court held a hearing on the two motions. The court granted the motion to compel on March 4, 1996, but declined to impose sanctions. The court also granted a protective order. The motion to compel directed Plaintiffs to produce all documents responsive to New Track's second set of requests, including the tax returns, financial statements, and documents supporting their damage claims. The order allowed Plaintiffs fifteen days to comply and further directed Plaintiffs to produce an index identifying which documents were responsive to which specific request.

According to Plaintiffs, they produced every requested document in their possession, custody, or control. Their production included more than 3000 documents, including Choi's Korean tax returns. An index accompanied the documents, identifying which were produced in response to which request. New Track complained, however, that many documents were written in Korean, making it difficult to determine whether Plaintiffs had completely complied with the March 4, 1996 order. Furthermore, Plaintiffs failed to produce any of Youn's Ohio income tax returns, his federal income tax returns for calendar years 1990-92, or any financial statements. Choi claims not to have produced financial statements for CKH because no such statements ever

existed. Youn produced five years of his federal income tax returns and later provided New Track with a signed form authorizing New Track's counsel to obtain the remaining federal returns. Youn also denied filing Ohio income tax returns.

New Track filed a second motion for sanctions, seeking both monetary penalties and the dismissal of Plaintiffs' claims. On April 25, 1996, the court held a hearing on the sanctions motion. Finding that Plaintiffs had not complied with the earlier order, the court imposed monetary sanctions on April 29, 1996. The court ultimately ordered Plaintiffs to pay $5,488.00 in sanctions after New Track filed an affidavit setting forth the costs it had incurred in connection with filing the second sanctions motion. Finally, the court ordered Plaintiffs to file sworn declarations stating whether or not they had complied with New Track's discovery requests. Plaintiffs stated under oath that they had already produced all documents in their possession covered by New Track's requests and that financial statements for CKH never existed.

Plaintiffs moved for reconsideration of the sanctions order. The court denied the motion and levied an additional $1,000.00 penalty "as a reasonable fee for preparing and presenting arguments in relation to plaintiffs' motion for reconsideration." (J.A. at 253.)

Disbelieving Plaintiffs' declarations, on May 24, 1996, the court ordered Plaintiffs to pay to have all of the Korean documents produced from 1992 translated into English. Once translated, the court would conduct an *in camera* inspection to determine whether any were "financial statements." Plaintiffs had already produced roughly 1000 Korean documents from 1992 and claimed to lack the funds to pay for the translation. Plaintiffs applied to this Court for a writ of prohibition asking this Court to direct the district court not to require Plaintiffs to pay for the translation. This Court refused. *In re Youn*, No. 96-3599, slip op. (6th Cir. Aug. 8, 1996).

Plaintiffs then moved the court below to modify the translation order. The court agreed to a new procedure that would no longer require Plaintiffs to pay for the translation of all documents from 1992. Instead, the court proposed to select an accountant fluent in Korean who would examine the documents at Plaintiffs' expense and determine whether any qualified as "financial statements." New Track evidently expressed concern that a Korean-speaking accountant would be partial to Plaintiffs. After choosing a Korean-speaking accountant, Samuel Lee, of Columbus, Ohio, the court prohibited counsel from revealing his clients to Lee. Lee confirmed that none of the 1992 documents were "financial statements" as New Track had defined that term in its discovery requests.

As the court explained, this left one issue: "whether plaintiff has retained documents fitting the agreed definition of 'financial statements' or whether they simply do not exist." (J.A. at 332.) To this end, on April 22, 1997, the court authorized New Track "to obtain the financial records for Choi from his accountant in Korea." (*Id.*) At that point, an independent accountant fluent in both Korean and English and familiar with Korean income tax laws would review the documents to determine whether any were "financial statements."

Choi signed releases authorizing his accountant, Y.S. Park of Seoul, South Korea, to provide CKH's financial records to New Track's counsel. Park told New Track's counsel, however, that he had no responsive documents because he had already provided them all to Choi. Choi, in turn, claimed in his earlier declaration that he had already produced everything he had. New Track filed another motion to compel. New Track also sought dismissal of the complaint and other sanctions against Plaintiffs. On April 9, 1998, the court declined to impose further penalties, but issued a broader discovery order that specifically required (rather than

merely authorized) Plaintiffs to produce CKH's South Korean income tax returns.[4]

Plaintiffs retained Elijah Min, a Korean-speaking CPA and graduate of Seoul University Law School. Plaintiffs asked Min to examine CKH's documents and question Chio's accountant. He did so, and on May 12, 1998, Plaintiffs filed Min's affidavit. Min stated that CKH was a small business, similar to many Korean family businesses. According to Min, there was no business reason why a company as small as CKH would pay someone to create financial statements.[5]

New Track had not yet filed an answer to Plaintiffs' original complaint. On June 1, 1998, Plaintiffs filed an amended complaint that added Old Track as a defendant. The addition of Old Track would have defeated the court's diversity jurisdiction as Youn is an Ohio resident, so New Track moved to strike the amended complaint. The court deemed New Track's earlier jurisdictional motion reinstated as of December 22, 1995, when settlement negotiations failed. The court incorrectly determined that the motion to dismiss for lack of personal jurisdiction was a responsive pleading.[6]

---

[4] The Court explained that its "Order of April 22, 1997 allowed [New Track] the opportunity to obtain the financial records from Plaintiff Choi's accountant. What the Court did not make clear was that this should be accomplished with Plaintiffs' *full* cooperation." (J.A. at 388) (emphasis in original.) Plaintiffs vehemently contend that they had already provided New Track with CKH's 1992 South Korean income tax return on March 14, 1996, and that the court's order reflects its confusion. This Court has no basis to question the district court's factual conclusion.

[5] New Track moved to strike Min's affidavit because Plaintiffs did not offer Min as an expert and his evaluations and opinions allegedly did not comply with Fed. R. Evid. 701, governing lay testimony. The court never ruled on this motion.

[6] Motions to dismiss are not "responsive pleadings" within the meaning of Rule 15(a). *Kamerman v. Pakco Cos., Inc.*, 75 F.R.D. 673, 674 (S.D.N.Y. 1977) (holding that motion to dismiss based on lack of *in personam* jurisdiction is not a "responsive pleading"); *see also Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1068 (4th

The court struck the amended complaint under Fed. R. Civ. P. 15(a), because pursuant to this rule, once the defendant has served a responsive pleading, a party may amend his complaint only by leave of court or with the consent of the adverse party.

Following another year of additional discovery-related motions, including a new motion by Defendant to dismiss the case as a sanction for discovery violations, Plaintiffs moved to recuse Magistrate Judge Timothy Hogan on November 24, 1999. In their motion, Plaintiffs stressed that the Magistrate Judge had already stated that he would not believe any further "tales" about the nonexistence of financial statements. (J.A. at 388.) The court denied the motion for recusal on March 6, 2000.

Plaintiffs next moved the district court to vacate its Order of Reference on December 18, 2000. On January 29, 2001, while that motion was pending, the Magistrate Judge held an evidentiary hearing on New Track's motion to dismiss for lack of jurisdiction. On May 31, 2001, the court found that New Track lacked sufficient minimum contacts with Ohio for the reasonable exercise of personal jurisdiction. Correspondingly, the case was dismissed with prejudice.

The parties cannot agree why the court dismissed the case. New Track's brief attempts to characterize the court's decision as a sanction for Plaintiffs' misconduct. In fact, the court dismissed the case for lack of personal jurisdiction. The district court wrote, "the exercise of jurisdiction in this case would 'offend traditional notions of fair play and substantial justice,' *International Shoe*, 326 U.S. at 316, and [New] Track's motion to dismiss [based on lack of personal jurisdiction] should be, and is, granted." (J.A. at 571.) After concluding its analysis of personal jurisdiction, the opinion

---

Cir. 1993) ("A motion to dismiss is not a responsive pleading for the purposes of Rule 15(a)."); *Worcester County Nat'l Bank v. Cohn*, 48 F.R.D. 285, 286 (S.D.N.Y. 1969) (holding that motion to dismiss based on lack of subject matter jurisdiction is not a "responsive pleading").

discusses New Track's request to transfer the case, which may explain New Track's confusion. The court explained,

> [New Track] requests that, should the Court decide not to dismiss on jurisdictional grounds, the Court transfer this action to the Western District of Texas under 28 U.S.C. § 1391 and 28 U.S.C. § 1406(a). [New Track] also proceeds to request, in the alternative, a transfer of venue pursuant to a 28 U.S.C. § 1404(a) under the doctrine of *forum non conveniens.* . . . The Court declines to transfer this matter to the Western District of Texas, and holds that, in the interest of justice, dismissal is the more appropriate avenue. As the parties and this Court are fully aware of the tortured and lengthy history of this case, primarily due to Plaintiffs' numerous attempts to frustrate discovery, the Court will not recite the specific instances of discovery abuses perpetrated by Plaintiffs. This case has languished in this Court for approximately six years and the Court declines to burden the District Court in Texas with an action which could have, and should have, been filed in Texas, and which, but for Plaintiffs' dilatory conduct, could have been transferred within the statute of limitations period. We are well aware that dismissal of this action will most certainly preclude Plaintiffs from re-filing this action in Texas due to the applicable statute of limitations, but cannot say, in good conscience, that Plaintiffs' conduct has not warranted such a sanction. For this reason, we decline to transfer this action to the Western District of Texas.

(J.A. at 571-72) (citation omitted.) This passage addresses the decision not to transfer, as opposed to the dismissal based on lack of personal jurisdiction.

On June 4, 2001, Plaintiffs timely appealed.

## DISCUSSION

We begin with the underlying question of whether the District Court for Southern District of Ohio had personal jurisdiction over Defendant New Track.

## I.

A district court's dismissal of a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure receives *de novo* review. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887-88 (6th Cir. 2002). The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Neogen*, 282 F.3d at 887. When the district court holds an evidentiary hearing to determine jurisdiction, Plaintiffs must make more than just a "*prima facie* showing." *Id*. Plaintiff must establish jurisdiction by a preponderance of the evidence. *Serras v. First Tenn. Bank Nat'l Assocs.*, 875 F.2d 1212, 1214 (6th Cir. 1989).

A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972).

The bedrock principle of personal jurisdiction due process analysis is that when the Defendant is not physically present in the forum, she must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (holding that a Defendant may not be required to defend an action in a foreign tribunal unless he has had "minimal contacts" with the forum state). "Minimum contacts" exist when "the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is necessary that the Defendant

"purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir.1998). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (quotation marks and citations omitted). "Random," "fortuitous," or "attenuated" activity is not a constitutionally adequate basis for jurisdiction. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

The Supreme Court distinguishes between "general" jurisdiction and "specific" jurisdiction, either one of which is an adequate basis for personal jurisdiction. *See, e.g.*, *Burger King*, 471 U.S. at 472, 473 n.15 (1985); *see also Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (noting that a distinction between general and specific jurisdiction exists for the purpose of due process analysis). A federal court has general jurisdiction when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state. *See, e.g.*, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952); *Bird*, 289 F.3d at 872 (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Using the relevant Supreme Court precedents, in *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968), this Court established a three-part test for determining whether, consistent with due process, a court may exercise specific personal jurisdiction: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

During 1992, the year in which New Track owned and operated Old Track's business but had not yet moved it entirely to San Antonio, New Track had five significant contacts with Ohio. First, although New Track was formed under Nevada law, most of New Track's tangible property was in Ohio. Second, New Track secured Ohio telephone service and registered with various Ohio agencies as an Ohio employer. Third, whatever the contractual relationship between the parties, Youn purchased hundreds of thousands of dollars worth of bowling balls from New Track by sending orders to New Track's Ohio offices. Fourth, Youn negotiated the "Volcano" agreement with Cardinale while Cardinale remained based in Ohio. Finally, the trade relationship (including transactions related to the Volcano agreement and the alleged initial written contract) prospered in Ohio during 1992. Plaintiffs contend these contacts are sufficient for the district court to have assumed specific personal jurisdiction.

New Track responds by arguing that it maintained only a temporary office in Ohio, its Ohio office did virtually no business with anyone in 1992 other than Plaintiffs, and neither CKH nor Choi (the sole owner of CKH) had an office in Ohio.

The parties do not dispute that Ohio courts have the statutory authority to assume jurisdiction over this case. This means the only question is whether Ohio courts could do so consistent with the federal Constitution. *See Reynolds*, 23 F.3d at 1115; *Welsh*, 631 F.2d at 439; *In-Flight Devices*, 466 F.2d at 224.

Specific jurisdiction exists because New Track's contacts meet the *Southern Machine* test with respect to both the

exclusive distributorship agreement and the Volcano agreement. *See* 401 F.2d at 381. Initially, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* A defendant has "purposefully availed" himself of a forum by engaging in activity that should provide "fair warning" that he may have to defend a lawsuit there. *See World-Wide Volkswagen*, 444 U.S. at 297 (explaining that purposeful availment requirement assures that defendant will be aware that it is subject to suit in forum state); *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 85 (2d Cir. 1995) ("[P]urposeful conduct provides a defendant with 'fair warning' that he and his property may be subject to the exercise of a forum state's power."); *Jones v. Petty Ray*, 954 F.2d at 1068 ("Those activities, whether direct action in the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there."). A single act may meet the purposeful availment requirement. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (finding that a single contact, entered into by mail with a forum state resident, could meet the minimum contacts test for suit on the contract); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418-19 (5th Cir. 1993) (concluding that single act by corporate defendant directed at the forum may be enough to give rise to specific personal jurisdiction if the act gives rise to claim being asserted); *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (same). During 1992, New Track's Ohio offices received CKH's product orders. New Track's Ohio office also faxed confirmations of those orders to Youn. Furthermore, New Track negotiated the alleged Volcano agreement in Ohio and began transactions related to that deal from Ohio. These contacts are directly related to the Plaintiffs' action and meaningful enough to constitute purposeful availment. *Cf. California Software, Inc. v. Reliability Research, Inc.*, 631 F. Supp. 1356, 1361 (C.D. Cal. 1986) ("[W]here the defendants expressly aim their conduct and direct the injury flowing therefrom, at a resident in the forum state, the defendants should anticipate answering for their conduct in the forum.").

The second prong of the *Southern Machine* test requires that the cause of action arise from the defendant's activities within the forum. 401 F.2d at 381. "The law of this circuit is that the 'arising from' requirement is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." *Third Nat'l Bank*, 882 F.2d at 1091 n.2. This test is easily met here because Plaintiffs' claims arise from Ohio commercial activity in 1992. *See id.* (holding that court may exercise specific jurisdiction when plaintiff's claim has "a substantial relation to the defendant's in-state activities").

Finally, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach.*, 401 F.2d at 381; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 116 (1987) (declining to find specific jurisdiction based on a reasonableness and fairness inquiry). In *Asahi Metal Industry Co., Ltd. v. Superior Court,* the Supreme Court determined whether the exercise of specific jurisdiction over the defendant was reasonable by balancing "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." 480 U.S. at 113; *see also Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir.1991). Since Youn resides in Ohio and Choi has connections there, they have an interest in resolving matter in Ohio. Although Plaintiffs have not brought their action in the Ohio courts, the existence of federal avenues for relief in Ohio still serves Ohio's interest in protecting its residents' legal options. *Cf. Burger King*, 471 U.S. at 478 (noting that forum state had "manifest interest" in providing a forum for its residents); *McGee*, 355 U.S. at 223 ("It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."). It would undoubtedly burden New Track to defend this case from Texas, but "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at

114. That burden exists partly because New Track voluntarily moved. We have also upheld specific jurisdiction in cases where doing so forced the defendant to travel. *See, e.g., Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 911-12 (6th Cir. 1988) (upholding jurisdiction in Michigan over Illinois defendant); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170-71 (6th Cir. 1988) (allowing jurisdiction in Michigan over California defendant). Accordingly, we find that the Southern District of Ohio has personal jurisdiction over New Track.

## II.

We next consider the discovery sanctions. This Court reviews the imposition of sanctions for abuse of discretion. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998); *Harmon v. CSX Transp.*, 110 F.3d 364, 366 (6th Cir. 1997). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Id.*

New Track filed its first motion to compel on January 10, 1996, alleging that Plaintiffs failed to produce Youn's Ohio and federal income tax returns, material related to Plaintiffs' damage calculations, and CKH's financial statements. New Track filed for sanctions less than one month later. After holding a hearing on the two motions, the court declined to impose sanctions but did issue a motion to compel.

Although Plaintiffs produced some documents, they did not produce financial statements and certain income tax returns. New Track again moved for sanctions. On April 25, 1996, the court held a hearing on the motion. The court imposed sanctions and directed New Track to file an affidavit attesting to the costs incurred as a result of Plaintiffs' discovery violations. The court ultimately assessed costs against Plaintiffs in the amount of $5,488.00. Plaintiffs argue that this was improper.

On May 9, 1995, Plaintiffs moved the court to reconsider its earlier penalty. The court responded by imposing an additional $1,000.00 sanction. Plaintiffs appeal this fine as well.

A district court has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-50 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66 (1980); *Ray A. Scharer & Co. v. Plabell Prods., Inc.*, 858 F.2d 317, 320-21 (6th Cir. 1988); *Shipman v. Int'l Union of Operating Eng'rs*, *Local 18*, 744 F.2d 1226, 1230 (6th Cir. 1984) (*en banc*). The "imposition of inherent power sanctions requires a finding of bad faith," *First Bank of Marietta v. Hartford Underwriters Insurance Co.*, 307 F.3d 501, 517 (6th Cir. 2002), or conduct "tantamount to bad faith." *Roadway Express*, 447 U.S. at 767. Moreover, Fed. R. Civ. P. 37(c)(1) expressly authorizes a district court to impose monetary sanctions on a party for a refusal to obey a discovery order. As the rule read in 1996, when the court imposed sanctions:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.[7]

FED. R. CIV. P. 37(c)(1), Federal Civil Judicial Procedure & Rules (West 1996). If the court grants a motion to compel,

> the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated

---

[7]Congress substantially amended Fed. R. Civ. P. 37(c)(1) in 2000, but not in any respect relevant here. *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343-44 (6th Cir. 2002).

the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(4)(A).  Thus, once the court grants a motion to compel and provides the responding party an opportunity to be heard, it "shall" require the responding party to pay the moving party's expenses unless the responding party had a "substantial justification" or some other circumstance makes such an award unjust.  Rule 37 has no bad faith requirement.  *See Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.* 842 F.2d 150, 154-55 (6th Cir. 1988) (listing bad faith as only one factor among many a court should consider before dismissing a case as a Rule 37 sanction).

The district court's sanctions order does not explain whether the court's inherent authority or Fed. R. Civ. P. 37 is the basis for the penalty.  Since the court below did not find bad faith or that Plaintiffs' conduct was "tantamount to bad faith," *Roadway Express*, 447 U.S. at 767, we must presume the court sanctioned Plaintiffs under Rule 37.

Before imposing the penalty, the court held a hearing that gave Plaintiffs an opportunity to be heard.  Plaintiffs claimed that the requested financial statements never existed and that they turned over all the materials they had.  New Track claimed Plaintiffs have hidden or destroyed the financial statements and otherwise not cooperated.  This is a pure dispute of fact.  Nothing suggests the court clearly erred in siding with New Track by concluding Plaintiffs violated several discovery orders.  Repeatedly violating discovery orders is certainly contumacious and justifies sanctions. *Harris v. Akron Dep't of Pub. Health*, No. 00-3497, 2001 WL 52553,*3 (6th Cir. May 8, 2001) ("The district court did not

abuse its discretion by excluding any further evidence from [the plaintiffs] as a Rule 37 sanction after they repeatedly failed to provide complete and appropriate responses to discovery requests.") (unpublished).  Therefore, the district court did not err in imposing discovery sanctions on Plaintiffs.

The district court was incorrect, however, to impose an additional penalty based on Plaintiffs' request for reconsideration of the discovery sanctions.  Unfortunately, as with the earlier sanctions order, the court did not specify the authority upon which it relied.

A court cannot impose sanctions under Fed. Civ. P. Civ. 11 without first providing "notice and a reasonable opportunity to respond," which the court did not do with respect to those sanctions specifically related to the motion to reconsider. *See* Fed. R. Civ. P. 11(c).[8]  Rule 37 allows courts to impose the fees and costs incurred in making a motion to compel as a discovery sanction, but it does not authorize sanctions for other expenses, including expenses related to defending a motion for reconsideration.  *Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Group*, 55 F.3d 463, 467 (9th Cir. 1995).  Finally, the court's inherent authority cannot serve as a basis for these sanctions because the court made no finding of bad faith or conduct tantamount to bad faith.  *See Roadway Express*, 447 U.S. at 767, *First Bank of Marietta*, 307 F.3d at 517.  Thus, no legal basis exists for the imposition of the additional sanctions related to the motion to reconsider. Consequently, we reverse those sanctions issued in response to Plaintiffs' motion to reconsider.

---

[8]If the court had mentioned Rule 11 and followed appropriate Rule 11 procedures, that rule possibly could have served as a basis for the sanctions because it confers the authority upon a federal court to impose sanctions when a party has filed a frivolous pleading, motion or other paper.  *Bodenhamer Bldg. Corp. v. Architectural Research Corp.,* 873 F.2d 109, 115 (6th Cir.1989).  The court might have found the motion to reconsider frivolous.

### III.

Finally, plaintiffs argue the magistrate judge should have recused himself. "This court 'reviews decisions denying . . . motions to recuse under the abuse of discretion standard.'" *Ullmo ex rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 681 (6th Cir. 2001) (quoting *United States v. Hartsel,* 199 F.3d 812, 815 (6th Cir.1999)). We must have a "definite and firm conviction that the trial court committed a clear error of judgment" before reversing under the abuse of discretion standard. *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989).

Plaintiffs make two arguments. First, they claim the judge had already decided not to believe them. The court wrote in one order that it would "not entertain any further tales that [the financial statements] do not exist." (J.A. at 388.) He also called Plaintffs' affidavits "unbelievable" and their discovery conduct "deplorable." (J.A. at 306, 387.) Second, Plaintiffs accuse the judge of racism. In their brief, they argue:

> Stereotyped distrust of the Koreans reached its apex when the magistrate embraced [New] Track's proposed ethnic classification procedure. Out of an explicit fear that the selected Korean accountant would side with his own kind, counsel for the parties were prohibited from disclosing anything about the case to the Korean accountant – prohibited even from disclosing the parties that they represented. The magistrate even prescribed a "sanitized" protective order—"sanitized," that is, to prevent the selected Korean accountant from finding out the identity of the parties, who was representing whom, or anything else about the dispute.

(Pl. Br. at 56.) Plaintiffs argue that the magistrate judge should have recused himself because of his alleged racism and general predisposition to disbelieve Plaintiffs.

Plaintiffs brought their motion to recuse the magistrate judge under 28 U.S.C. § 455(a), which provides: "Any

justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under § 455, a judge must *sua sponte* recuse himself if he knows of facts that would undermine the appearance of impartiality. *Liteky v. United States*, 510 U.S. 540, 547-48 (1994). Also relevant is 28 U.S.C. § 144, which states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

An affidavit filed under § 144 must "allege[ ] facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party." *Gen. Aviation, Inc. v. Cessna Aircraft, Co.,* 915 F.2d 1038, 1043 (6th Cir.1990).

The alleged bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1965). Extrajudicial conduct encompasses only "personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Id.* at 1090 (internal quotation marks omitted). "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251-52 (6th Cir.1989) (citing *Demjanjuk v. Petrovsky,* 776 F.2d 571, 577 (6th Cir.1985)).

As we have explained, "[i]t is well settled that sections 144 and 455 'must be construed *in pari materia*' and 'that disqualification under section 455(a) must be predicated as previously under section 144, upon extrajudicial conduct rather than on judicial conduct.'" *United States v. Story,* 716

F.2d 1088, 1091 (6th Cir. 1983) (quoting *City of Cleveland v. Krupansky,* 619 F.2d 576, 578 (6th Cir. 1980)).

From the outset, plaintiffs did not file the required affidavit setting forth allegations of bias or prejudice. Recusal is never granted without the affidavit. *United States v. Sammons*, 918 F.2d 592, 598 (6th Cir. 1990). Furthermore, recusal is also unwarranted because Plaintiffs do not allege bias from extrajudicial sources. *Wheeler*, 875 F.2d at 1252. Plaintiffs base their allegations exclusively on the magistrate judge's orders and oral statements during proceedings related to this action. Finally, Plaintiffs' behavior probably justifies the judge's perspective. Plaintiffs fail to allege anything "which a reasonable person would believe would indicate [the] judge has a personal bias against the[m]." *Gen. Aviation,* 915 F.2d at 1043. Plaintiffs' request for recusal is baseless.

For the reasons stated above, we **REVERSE** the dismissal with prejudice based on personal jurisdiction and those sanctions related to the motion to reconsider, and **AFFIRM** all other sanctions and the denial of the motion to recuse.