NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0521n.06
Filed: August 26, 2008

No. 06-2430

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

JACQUELINE CHEESE,

      Plaintiff-Appellant,

v.                                    ON APPEAL FROM THE
                                        UNITED STATES DISTRICT

THE UNITED STATES OF AMERICA,      COURT FOR THE EASTERN
                                        DISTRICT OF MICHIGAN

      Defendant-Appellee.

_____/

Before:      MARTIN and BATCHELDER, Circuit Judges, and JORDAN, Senior District
               Judge[*]

      BOYCE F. MARTIN, JR., Circuit Judge. Jacqueline Cheese suffered complications after

a diagnostic exam of her bladder and kidneys performed at a Veterans Affairs Hospital which

eventually led to the loss of one kidney. She sued for medical malpractice under the Federal Tort

Claims Act alleging breach of the standard of care and lack of consent to the procedure that led to

her injuries. The district court found there had been a breach of the standard of care, but only as

to an early discharge, and therefore awarded damages only for the pain and suffering she endured

---

      [*]The Honorable R. Leon Jordan, Senior District Judge for the Eastern District of
Tennessee, sitting by designation.

during the delay of one day. Cheese now appeals claiming that (1) the court inappropriately used a court-appointed expert, and (2) the district court erroneously found that she consented to the procedure. Because the district court's findings as to consent and bias are supported by the record, and because Cheese did not otherwise object to the court's use of its expert, we AFFIRM.

I

On April 6, 1998, Cheese went to the Veterans Affairs Medical Center due to pain on the left side of her lower back and blood in her urine. Doctors were unable to determine the source of her pain after initial exams, and therefore recommended a cystoscopy retrograde pyelogram. Under this procedure, doctors would insert a tube through her bladder and shoot dye into the ureter (connecting to the kidney) to identify the source of her pain. Prior to the procedure on April 15, Cheese signed a consent form which identified the procedure as "cystoscopy, retrograde pyelogram, possible uteroscopy (L)." Cheese was anesthetized, and the procedure was performed by senior resident Dr. Robert Marcovich, assisted by Chief Resident Dr. Vashi, and under the direction of attending surgeon, Dr. Stuart Wolf (since the Center is a teaching hospital, Dr. Wolf, a member of the University of Michigan Medical School, oversaw the procedure but it was performed by the residents). The doctors were unable to observe the source of Cheese's pain or blood after examining both sides of her urinary tract. While Cheese was still under anesthesia, they decided that two possible sources of her symptoms were cancer in the urinary tract or a kidney disease that would require a biopsy to detect. To test for cancer, the doctors advanced the catheter farther up Cheese's ureter and performed a washing of the renal pelvis. This involved injecting saline solution through the catheter, waiting a few minutes, and then withdrawing the solution. The salt water removes some cells from the urinary tract walls which can then be tested

for cancer.  The procedure appeared to be successful at the time, yet when Cheese awoke she was in excruciating pain on her *right* side – where there had been none prior to surgery.  Cheese was kept overnight at the hospital to monitor her pain, but Dr. Wolf was not informed of her condition.  The next morning, April 16, despite continuing high levels of pain, she was discharged by Dr. Seifman, a junior resident.  Cheese returned to the hospital on April 17 when her pain did not subside.  Dr. Marcovich ordered further tests which showed that urine was leaking from her kidney, apparently from a puncture that occurred to her right kidney during the operation.  They inserted a stent later that day, which improved her pain.  Cheese then went elsewhere for treatment, having lost faith in the Center.  Another doctor removed her stent, but when her condition deteriorated again, a new stent was put in place.  During exploratory surgery on July 15, the doctor discovered that her kidney had calcified and was no longer functional.  While Cheese was under anesthesia and with permission from the family, he removed the kidney.  Cheese was eventually placed on disability due to continuing pain from her left side – the pain that had initially prompted her first hospital visit.  It appears there is no treatment available for her pain since further procedures are too risky with only one functioning kidney remaining.

Cheese sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, for (1) performing renal washings without consent, (2) performing washings which were unnecessary, (3) prematurely discharging her when she was still in pain on April 16, and (4) failing to place the stent to stop the urine leakage sooner.

On a motion by the defendants, the district court appointed an expert witness under Federal Rule of Evidence 706 to help the court evaluate the competing medical claims.  Both parties agreed to the appointment of Dr. Hollander.  However, after deposition, Cheese moved to disqualify Dr. Hollander because of alleged bias: he had previously worked with Dr. Wolf, who

was involved in the alleged malpractice. The court rejected the motion, finding that Dr. Hollander's knowledge of Dr. Wolf's reputation and his professional contacts with him were insufficient to lead to reasonable questioning of Dr. Hollander's impartiality.

During the bench trial, Dr. Hollander sat with the judge behind the bench and participated in the proceedings by asking questions and providing answers to the judge's questions – some of them substantive. Cheese's attorney asked for clarification as to Dr. Hollander's role, but never objected to his statements or participation.

After a bench trial, the court found that the Center had violated the standard of care when it discharged Cheese on April 16 despite her continuing high levels of pain. The court also concluded that this violation was the proximate cause of Cheese's pain and suffering between the time of her discharge and the time the stent was inserted. However, the court found that the violation was not a proximate cause of the loss of her kidney. The court also found that the renal washings were part of the retrograde pyelogram, and therefore Cheese had consented to the washings when she consented to the retrograde pyelogram. The court found no other violation. Accordingly, the court awarded $15,000 in damages based on the one day during which Cheese needlessly suffered, and attorney's fees and costs. Cheese then filed this appeal, claiming that the district court erred in denying her the opportunity to cross examine Dr. Hollander on the stand, in denying her motion to disqualify Dr. Hollander for bias, in finding that she consented to washing by consenting to the retrograde pyelogram, and in awarding damages only for one day.

II

A.

Cheese identifies two sources of error with respect to the court's use of Dr. Hollander. First, Cheese argues that she was denied the opportunity to cross-examine him in contravention

of Rule 706. Federal Rule of Evidence 706 provides for the appointment of expert witnesses by the court on its own motion or motions of the parties. Second, she argues that Dr. Hollander should have been disqualified for bias. As to her first argument, we can find nothing in the record to indicate that she requested to cross examine Dr. Hollander at trial. The district court cannot have denied what was not requested. Therefore, we reject the premise of Cheese's first argument – that she was denied the opportunity to cross examine Dr. Hollander.

As to her second argument – that Dr. Hollander should have been disqualified for bias – we have found no cases discussing a requirement of neutrality for court appointed experts. Assuming, as would be reasonable, that some neutrality requirement applies, and assuming that the most stringent neutrality requirement such an expert would face is that applied to judges, we do not find that the district court abused its discretion in rejecting Cheese's motion to disqualify Dr. Hollander for bias.

A judge must recuse herself when her impartiality might reasonably be questioned, or when she has a personal bias or prejudice. 28 U.S.C. § 455. We review a judge's decision not to recuse herself for abuse of discretion. *Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003). Bias requiring recusal requires more than a favorable or unfavorable disposition toward an individual. Rather, it results from an opinion that is *wrongful* either because it is based on knowledge the judge should not possess, or because the opinion is excessively strong. *In re Triple S Restaurants, Inc.*, 422 F.3d 405, 417 (6th Cir. 2005) (citing *Liteky v. United States*, 510 U.S. 540, 550 (1994)). The foundation for the allegations of bias by Dr. Hollander is tenuous. Dr. Hollander (1) speculated that Dr. Wolf might have been able to save Cheese's kidney had she remained in his care, (2) learned an unrelated technique from Dr. Wolf over the course of two days, and (3) had a reciprocal agreement with Dr. Seifman to see each other's patients for

weekend emergencies. As to Dr. Wolf, the district court concluded that though Dr. Hollander was familiar with Dr. Wolf's reputation, such was to be expected given their shared profession, and they were not social friends or professional colleagues. Therefore, Dr. Hollander's impartiality could not reasonably be questioned. We cannot say this was an abuse of discretion given the weak evidence of an excessively positive opinion of Dr. Wolf held by Dr. Hollander, and the lack of any extraordinary connection between the two. As to Dr. Seifman, the district court found that his decision to discharge Cheese was a violation of the standard of care, and therefore any bias Dr. Hollander might have had was not prejudicial to Cheese's case.

B.

Cheese asks this Court to find that the district court's factual findings relating to consent were against the weight of the evidence. We review a district court's factual findings for clear error. *See Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005). Cheese presents three specific problems in the trial court's reasoning: (1) that the court misstated testimony upon which it relied (2) that it found a fact in opposition to the court-appointed expert and (3) that a treatise section upon which it relied was taken out of context. None of these arguments seriously undermines our confidence in the factual findings of the district court.

Cheese first argues that the court misstated testimony. The district court stated that "all of the doctors who testified at trial testified that it is axiomatic in urology that gross hematuria – one of the symptoms Plaintiff Cheese presented – "is cancer until proven otherwise." Cheese points out that the testimony of Dr. Copeland was that gross hematuria *without pain* indicated cancer unless proven otherwise, and Cheese complained of pain. While this statement is true, it does not directly contradict the substantive thrust of the district court's statement, nor does it challenge that the other doctors' testimony supported the court's conclusion. Dr. Wood

specifically stated that "pain or no pain, as long as it's not an active infection, it is cancer until proven otherwise."

Cheese next argues that the court found a fact in contradiction to its own expert. The court based part of its reasoning on a finding that washings are a more accurate test for cancer than testing urine. Cheese notes that Dr. Hollander, the court-appointed expert, believed that there was no proof that one method was more accurate than the other. However, the court's conclusion is supported by the testimony of Dr. Wood that voided urine cytologies are only 40-60% accurate with respect to detecting cancer, whereas renal pelvic washings are 100% accurate.

Finally, Cheese argues that the court took a treatise section out of context. The district court credited the testimony of Dr. Wolf and Dr. Wood "that a washing is part and parcel of a retrograde pyelogram procedure." This goes directly to the issue of consent. Cheese challenges this finding by arguing that the section of a medical treatise used to support Dr. Wolf's testimony was taken out of context. Even if that were the case, it does little to show that the court was clearly erroneous in believing the testimony of two medical experts.

We do not find any clear error in these factual findings of the district court as they are supported by the evidence in the record. We therefore affirm the district court's conclusion that Cheese consented to the washings as part of her consent to the retrograde pyelogram.

C.

Cheese argues extensively about the calculation of damages, focusing in particular on lost future earnings. However, the district court found that the breach of the duty of care was not the proximate cause of any damages beyond the one day delay for which it awarded damages. Finding no reason to question the district court's opinion regarding proximate cause, we affirm its decision not to award further damages.

III

For the foregoing reasons, we AFFIRM the decision of the district court.